State of California *v.* Wells, Fargo & Co.

---

## THE STATE OF CALIFORNIA *v.* WELLS, FARGO & CO.

WARRANTS drawn by the Controller of State, delivered to the payees thereof, and by them endorsed in blank, were presented by the holders to the State Treasurer, and on payment were delivered to him. They were afterwards stolen from the office of the Treasurer. The warrants, on their face indicating a just and legal claim against the State, came into the hands of defendants, ignorant that they had been stolen. Defendants present them to the Treasurer, and in lieu thereof, receive State bonds payable to bearer, under the Funding Act of 1857, and part with them. The State sues for the bonds or their value; *Held,* that the action does not lie; that defendants having received the bonds *bona fide,* and without fraud, for warrants apparently good against the State, are not liable in this form of action.

The mere reception of the bonds, though issued by mistake, does not render defendants liable.

Bonds so issued are negotiable, and bind the State, in the hands of an innocent assignee.

*Arguendo.* A man, dealing with State securities, is not bound to search the books and records of State officers before buying claims against the State.

*Quere;* whether State books and records are subject to public inspection.

The bonds, in this case, constituted a payment of the warrants ; and if the rule that voluntary payments are not recoverable, be not applicable, still the equity of the defendants is equal to that of plaintiff, and Courts will not interfere.

APPEAL from the Twelfth District.

For facts see opinion. The demurrer specified many causes, and, among them, causes involving the positions discussed by the Court.

Plaintiff appeals.

*Crockett & Crittenden*, for Appellant.

It was immaterial whether defendants knew the warrants were stolen, or had been paid, or whether the Treasurer failed to endorse them as paid, because they were over-due, and having been in fact paid, and then stolen, they could not afterwards constitute a valid claim against the State. Defendants could not, even in the regular course of business, acquire a title to them, and consequently, surrendered nothing to the State for the bonds; and the agents of the State exceeded their authority in giving bonds for nothing. (Story on Prom. Notes, sec. 180; Chitty on Bills, ch. 6, 248.) It makes no difference whether defendants acted as owners of the warrants, or as agents. (*Poole* v. *Adkinson*, 1 Dana, 110.) This action lies, even if defendants had parted with the bonds before suit. (See *Southcote's case*, 4 Co. 83 ; *Bromley* v. *Lambert*, 2 Wash. 308; *Poole* v. *Adkinson et al.* 1 Dana, 119 ; *Burton* v. *Brashear*, 3 A. K. Marsh, 276; *Canel* v. *Early*, 4 Bibb. 270 ; *White* v. *Ross*, 5 Stew. & Port. 123 ; *Merritt* v. *Warmauth*, 1 Hayw. 12; *Murrel* v. *Johnson*, 1 H. & M. 450; *Haley* v. *Rowan*, 5 Serg. 301 ; *Renshaw* v. *Baykin*, 1 Brevard, 301 ; *Lowry* v. *Houston*, 3 How. Miss. 394.) Their having parted with the possession, unless by legal eviction, is no defense.

To the objection by defendants, that the bonds being void because issued for paid warrants, the State is not liable to the bond holders, and hence that this action does not lie, counsel replied, that the bonds themselves were a valid claim against the State. (*State of Illinois* v. *Delafield*, 8 Paige Ch. 527; 2 Hill, 159; 26 Wend. 192.)

The defendants are in this position. They have obtained the bonds from the agents of the State without any consideration whatever. The warrants were satisfied, and were not claims against the State entitled to be funded. In issuing the bonds for the warrants, the agents of the State exceeded their authority and their act was void.

This is a question which may be inquired into as between the original parties. No property in the bonds passed to the defendants. If they still hold the bonds, they can discharge themselves by their surrender. If they have put the bonds in circulation, they have unlawfully disposed of the plaintiff's property, in a manner to preclude the

State of California *v.* Wells, Fargo & Co.

plaintiff from raising any question as to the authority of her agents, and to bind the plaintiff to the payment of the bonds.

*Halleck, Peachy & Billings and Gregory Yale,* for Respondents.

1. This action cannot be maintained without averring the bonds to be in the hands of defendants; and the cases cited by plaintiff as to *detinue,* do not apply to a suit for negotiable paper. (Saunders Pl. & Ev. 962; 2 Rol. Ab. 112; 3 Blac. 152; B. N. P. 50; Bac. Ab. Detinue, 19; *Richards* v. *Frankham,* 6 M. & W.; *Williams* v. *Archer,* 17 Law J. 82, cited on page 962 of Saunders' Pl. & Ev.; Chitty on Bills, part 1, ch. 6, sec. 2.) No example is given by Chitty of a recovery in *detinue,* where the note was not detained. The gist of the action is the unlawful *detainer,* and not the original taking. (1 Chitty Pl. 121, 122–3.) So under our system. (Pr. Act, sec. 100.)

*Trover* would not lie, as the bonds were obtained under color of contract, without fraud. (1 Chitty's Pl. 155; *Lubert* v. *Chauviteau,* 3 Cal. 458; *Emanuel* v. *Dane,* 3 Campb. 299; *Fairman* v. *Grimpie,* 2 Car. & P. 266.) Here there was no fraud, but a simple presentation of warrants regular on their face, without knowledge that they had been paid. For cases of trover, where there is fraud, see 22 Pick. 18; 1 Met. 557; 8 Cal. 212; 7 Taunton, 366.

2. Defendants, as innocent holders of the warrants, were entitled to have them funded. They were regularly drawn under the Act of 1854, presented to the Treasurer, and by him endorsed and registered under the Act of 1852, and became a valid claim against the State. And, as there was no receipt on their back showing payment, and they were not filed away and preserved under the Act of 1850, they were entitled to be funded under the Act of 1857. They are just as negotiable, in the hands of innocent third persons, as the bonds themselves. The warrants were not over-due, in the sense used by appellant's counsel. The Funding Act of 1857, specifies as the claims to be funded, " all Controller's warrants, drawn under sanction of law, for civil expenses, prior to January 1st, 1857, and now outstanding and unpaid." So that no outstanding warrant, from the organization of the State to January 1st, 1857, was over-due, in the sense that, when paid after maturity, it ceased to be negotiable and lost its validity. The holders of the warrants were not compelled to fund under any of the previous funding acts. (*Smith* v. *Morse,* 2 Cal.; *McKibben* v. *Soule,* 6 Id.) A note paid before due, the fact being unknown to the holder, is still negotia-

ble. (Story on Prom. Notes, sec. 180. See also *Fulweiler* v. *Hughes*, 17 Penn. 448; 5 Harris; Story on Notes, sec. 107, note 3; *Palmer* v. *Goodwin*, 5 Cal. 458; *McCann* v. *Lewis*, 9 Id. 246.)

The fact that the warrants were stolen cannot help plaintiff. Although, as a rule, title cannot be acquired to stolen property, cash and commercial paper are exceptions. (2 Kent, 324–325, note *c*; *Saltus* v. *Everett*, 20 Wend. 267–277–288; 1 Burr. 452; *Loundes* v. *Anderson*, 13 East. 130; *Wyer* v. *Dorchester and Milton Bank*, 11 Cush. 151; Chitty on Bills, 523; Id. 23; 5 Duer, 268; *Swift* v. *Tyson*, 16 Pet. 1; *Wheeler* v. *Gould*, 20 Pick. 545; 10 Cal. 556.)

The Funding Act itself recognizes the validity of State securities, once presented and reissued. (Act of 1857, sec. 10.)

To say the least, the loss, in this case, is as much the fault of the State as of defendants, and must remain where the course of business has placed it. (17 Mass. 1; 3 Kent, note *c*, marginal, p. 86; 2 Caines, 338; 17 Barb. 171; 4 Johns. 386; 10 Pet. 134; 11 Wend. 88.) The fault, in fact, was on the part of the State. (7 Cal. 708.)

3. A mere agent is not chargeable with the value of the bonds after he has parted with them without notice. (*Hearsay* v. *Pruyn*, 7 Johns. 179; *United States* v. *Beavan & Humphries*, Crabbe's Dist. Court R. Penn.; *Campbell* v. *Hillman*, 15 B. Monroe; *Hunter* v. *Hudson & Co.* 20 Barb. 493.)

*Crockett & Crittenden*, in reply.

A *detainer* may be proved, in an action of *detinue*, by showing possession in defendants any time prior to suit brought. (Cases above cited, and 2 Starkie Ev. 493–494 and notes.) The point that trover will not lie because defendants obtained the bonds under color of contract, is untenable. The rule only means that the action will not lie, when the effect of the contract has been to vest the title of the goods in defendants, and the contract has not been rescinded. Because, to recover in trover, plaintiff must show property in himself, and a conversion by defendant, which cannot be done if defendant holds under a contract not rescinded. But if the contract be void, or voidable, and has been rescinded, the property either did not pass, or revests in the plaintiff, and he may recover in trover, notwithstanding the defendant acquired and claims to hold possession under color of contract.

Here no title to the bonds passed to defendants, because, the warrants having been paid, the Treasurer exceeded his authority. The

State of California *v.* Wells, Fargo & Co.

title to the bonds remained in the State, and the conversion, by the demand and refusal, would justify trover.

If defendants are *bona fide* holders of the warrants, that fact could appear only by answer.

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. and COPE, J. concurring.

This case involves principles somewhat novel in this Court. The defendants demurred to the complaint; the demurrer was sustained, and judgment rendered for the defendants.

The complaint avers that the defendants are a company incorporated under the laws of New York, and doing business in this State; that in 1855, certain warrants were drawn by the Controller of State—a schedule descriptive of which warrants is appended; that the warrants were drawn in payment of certain indebtedness of the State to the persons named in the warrants, were made payable to the payees or order, were delivered to the respective payees thereof, and by them indorsed in blank, and afterwards, and prior to the twenty-eighth of March, 1856, were all presented by the several holders thereof to the State Treasurer, and by him paid and discharged, and on the payment, were delivered up by the holders to the Treasurer; that afterwards and before the first of January, 1858, the warrants were stolen from the office of the Treasurer; that on the twenty-seventh of January, 1858, defendants, Wells, Fargo & Co., presented the warrants to Thomas Findley, then Treasurer, as claims against the State outstanding and unpaid, and entitled to be funded under the act of the Legislature of April 18th, 1857, entitled: "An Act to provide for paying certain equitable claims against the State, and to contract a funded debt for that purpose," and requested the Treasurer to issue to them, in exchange therefor, the bonds of the State of California provided for that purpose. That the warrants appearing to be of the class of bonds specified in the second subdivision of the eleventh section of that Act, and not appearing to be within any of the exceptions therein mentioned, and having upon them no receipt or indorsement showing them to have been paid or canceled, the Treasurer, believing them to be just and valid claims against the State, and entitled to be funded under the Act, in ignorance of the fact that they had been paid and satisfied, and of the fact that they had been stolen, and that the defendants had no title to the warrants, did, on the eighteenth of March, 1858, at the instance

State of California *v.* Wells, Fargo & Co.

of the defendants, exchange the warrants for bonds of the State, the defendants giving receipts for the bonds and surrendering the warrants. These bonds were payable to the bearer, and issued as and in the form required by the Funding Act.

That in October, 1858, the Treasurer ascertained the true facts of the case, and demanded of Wells, Fargo & Co. the bonds, which they refused to surrender.

· Various grounds of demurrer were specially set forth by the defendants, but it is not necessary to consider them all here.

It will be observed that the complaint does not aver any knowledge on the part of the defendants of the facts of payment, etc., set up in the pleading; nor does it aver that the defendants were not rightfully in possession of this paper; nor even that they were, or claimed to be the owners of this scrip, or that they made any false or fraudulent representation on the subject; nor does it aver that the bonds are still in the possession of the defendants. The whole case seems to rest upon the assumption that the bare fact that defendants had possession of this scrip, presented it for funding, and in exchange for bonds, and received the bonds, makes the defendants responsible, in this form of action, for the value of the bonds. It is not a case of a defense against the bonds in the hands of the defendants, upon the ground of a failure of consideration, arising from these facts, but the case of an asserted ground of affirmative relief, on account of the receiving of the bonds under the facts disclosed in the pleading.

These bonds, issued under the circumstances, are unquestionably negotiable instruments and binding upon the State, in the hands of an innocent assignee. The principle has been settled in the cases of *Delafield* v. *The State of Illinois*, (8 Paige, 533); 2 Hill, 177; 26 Wend. 192 and in other cases.

Upon a proper case the plaintiff, as held in the above cases, might have filed its bill to enjoin the negotiation of these bonds, and to have them surrendered or canceled, as against a fraudulent holder, or other party having no just claim to them. But this is not such a proceeding. It seems to be in the nature of an action of detinue for the bonds, on the ground that they were issued by mistake; and the plaintiff seeks a recovery without any averment that the bonds are still in the hands of the defendants, predicating the liability of the defendants upon this sole fact of the issuance of these instruments to them under, or in consequence of, this mistake.

State of California *v.* Wells, Fargo & Co.

We do not see how this claim can be maintained. The defendants seem to be in no greater default than the officers of the State. From anything that appears, they had what purported on its face to be a just and legal claim upon the State. The law requires of the officers of the State, (Wood's Dig. 97) on the payment of any warrant by the Treasurer drawn by the Controller on him, that he shall take the receipt of the person to whom the money is paid, on the back of the warrant, and carefully file away and preserve the same, indorsing thereon the number thereof. And, again, by the Act of May 3d, 1852, concerning the office of Treasurer of State, (Wood's Dig. 717) it is required of all persons to whom any warrant on the Treasurer is issued by the Controller, before such warrant shall constitute an indebtedness against the State, such warrant shall be presented to the Treasurer, who shall, if it be a lawful warrant, indorse the same on the back officially, with the date of such indorsement made by him, and no transfer shall be valid without such indorsement. The second section of the same act requires a register of these warrants to be kept by the Treasurer, with the date of the indorsement, the name of the person to whom issued, the amount, the number, and for whom issued.

There was nothing, then, to apprise the defendants of any objection to these warrants; but the very proofs which the State itself prescribed, as the proper assurance of their validity and authenticity assured the holder that they were what they imported on their face, and that the Act of 1858 provided for the funding of indebtedness of this character. It is not material, in the view which we are now taking of the case, to consider, whether the warrants were negotiable instruments in the hands of an innocent holder, or whether the bonds, issued by mistake for them, could be impeached in the hands of a holder charged with notice. For the question upon the plaintiff's pleading asserts a wholly different principle; the principle, namely, of a liability for having obtained and received these bonds under the circumstances. It is said that the defendants were bound to know the facts. We do not perceive the force of this suggestion, or why they should be held to any greater knowledge than the regular agents of the State, whose office and duty it was to ascertain the facts and to protect the public interests. But it cannot be held that every man who deals with State securities is bound to search the books and records of the State officers before proceeding to take an assignment of the claim against the State. We do not know that these books and papers are subject to public inspection; and, if

State of California *v.* Wells, Fargo & Co.

they were so held, it might lead to very embarrassing results.   In this case, it appears that the law had already prescribed a method of procedure, deemed by itself a sufficient protection and notification of the character of the claim; and the failure of the officers of the Government to follow the law ought not to be turned to the injury of a citizen and made the occasion of ruining him for being no wiser than those officers to whom this class of duties is specially entrusted.   The Treasurer seems to have been equally deceived in regard to this matter as the defendants; and yet he is admitted to be a vigilant and faithful officer.   The hardship and injustice, therefore, of holding the defendants responsible for these bonds is apparent.   It is not, as we are now considering it, the attempt of defendants to enforce this bond against the State.   It is the case of a party, having under these equitable circumstances, got into possession *bona fide* and without fraud, of certain securities for a claim apparently just against the State, and then the State coming forward, not to demand possession of the securities, but seeking to hold him bound for the value of these securities, after he has parted with them.   If this transaction occurred between private persons, there could be no doubt.   If A had published that all his outstanding and unpaid orders on B should be paid in stocks, and that his agents had been ordered to write a receipt on the back of those which had been paid, that they all should be registered and indorsed in the name of the payee; if they purported to be payable on presentation and for value; and if C got one of these orders, took it to the clerk and agent of A, surrendered it, and took in lieu of it negotiable security, and afterwards transferred the security, we imagine that no one would contend that C could be made to pay the value of this security, on the ground that a former clerk had omitted to cancel the paper and indorse it, and that through the mistake of the last clerk, which mistake was induced by mistake or fraud of the first, the security had been issued to A.   To say the very least, the equity of C to hold on to what he got, on *a chose in action* assigned to him, and which he had every reason to believe was a good claim, would be at least equal to the claim of A, whose own conduct or that of his agents caused the act from which the loss accrued.   The principle applies in such case, that the loss should fall on him by whose fault or confidence it came.   The condition of the person in possession would be the better under such a state of facts.

We see no difference between a State and an individual in the appli-

cation of this principle. A State should act with as much justice, and be held to as strict responsibility as one of her own citizens in these matters of dealing and contract; and it is better that she should be held responsible for the acts of her agents, than that she should reap the benefits of fraud committed upon innocent third persons by those agents, under cover and color of authority.

We regard the issuance of these bonds as a payment of the old claim, for we see no difference between these bonds—which are negotiable upon their face, and have a fixed value in the market, and circulate as money—and the same amount in bank notes or coin, so far as the rule is concerned which gives protection to such payment. If the rule, which makes a voluntary payment not subject to recovery in cases of this sort, be not applicable, yet we think that the equity of the defendants upon the facts of this suit is, to say the least, equal to that of the plaintiff, in which case the Courts will not interfere, but will leave the parties where they were before.

If the defendants were mere agents to get these bonds, the case would be still stronger for them; indeed, it would be a case admitting of but little argument, for it would be very difficult plausibly to argue, that an agent cannot present a claim on the State without being held to know more about the facts and merits of it than the officers of State; or that when he takes the assurance of the State officers, that it is a good claim, and receives the money, he shall suffer for his credulity (even after he pays his principal) in the full penalty of the sum he received.

But this question does not necessarily arise, and we put our judgment upon the broader ground already indicated.

Judgment affirmed.