# Blackman *v.* Lehman, Durr & Co.

### *Trover for Conversion of Municipal Bonds.*

1. *Rights of property.*—The principle is almost universal in its application, that no man's property can be taken from him without his consent, express or implied, except by due course of law.

2. *Transfer of bills, notes, or bonds; rights of transferree.*—Negotiable or commercial paper is transferrable by delivery, and a holder thereof may, before dishonor, transfer to a *bona fide* purchaser for value a title freed from all infirmity, and which will prevail over that of the true owner, although he himself obtained it fraudulently, or feloniously; but, as to all other paper, an assignee or transferree succeeds only to the rights and title of his assignor or transferror.

3. *What paper is negotiable, or transferrable by delivery.*—A bill of exchange, promissory note, or other instrument, to be negotiable paper, or transferrable by delivery, must be payable absolutely and unconditionally, and not on a contingency which may never happen; and this must depend upon its terms at the time it is made: if, when it is made, the payment is to depend on a condition, contingency, or uncertain event, the subsequent happening of that event or contingency will not change its character.

4. *Same; bonds of corporation.*—The bonds of a corporation, public or private, if issued by authority, and possessing in themselves the requisites of negotiable paper, are, after some vacillation of judicial decision, now recognized as on an equality with bank-notes, bills of exchange, and promissory notes; and the corporate seal does not affect their negotiability, neither conferring nor destroying that quality.

5. *Requisites of negotiable paper.*—Negotiable paper must also be certain as to the payee: though it is not necessary that the payee should be named, the instrument must on its face afford an indication or designation by which he can be ascertained.

6. *Same.*—Each State has the undoubted legislative right and power to enlarge or diminish the character of paper which shall be negotiable; and under the laws of Alabama, passed in the exercise of this power, only bills of exchange and promissory notes payable in money at a bank or banking-house, or at a certain place therein designated, and bank-notes intended to circulate as money, are subject to the commercial law; while it is expressly declared by the statute (Code, § 2098), that all bonds, bills, or notes (except those issued to circulate as money), when "payable to anything *or bearer*, or to any fictitious person *or bearer*, or *to bearer* only, must be construed as payable to the person from whom the consideration moved," and, consequently, can only pass by his indorsement.

7. *Municipal bonds of Troy, issued in aid of Mobile and Girard Railroad.* The bonds issued by the city of Troy in aid of the Mobile and Girard Railroad, under the authority of the special statute approved December 8th, 1868 (Sess. Acts 1868, pp. 395-6), are not negotiable paper, because on their face they are made payable on a contingency which might never happen—that is, the completion of the railroad to Troy; and also because they are payable to

bearer only. Not being negotiable, the title to such bonds can not pass by delivery, nor, as against the real owner, otherwise than by his indorsement or assignment.

8. *When trover lies for conversion of bond.*—The owner of a non-negotiable bond may maintain an action for its conversion against a person who obtained it through an unauthorized transfer by his agent or bailee, and who refuses to deliver it on demand.

APPEAL from the City Court of Montgomery.

Tried before the Hon. JOHN A. MINNIS.

This action was brought by Homer Blackman, against Lehman, Durr & Co., to recover damages for the alleged conversion by the defendants of one hundred and eighty bonds, issued by the corporate authorities of the city of Troy, in aid of the Mobile and Girard Railroad. On the undisputed facts of the case, the court charged the jury, in effect, that the plaintiff was not entitled to recover; and this charge, to which an exception was duly reserved, is now assigned as error. The opinion states all the material facts. The case was decided at the December term, 1878.

D. CLOPTON, for appellant.

S. F. RICE, and W. A. GUNTER, *contra.*

BRICKELL, C. J.—The action is trover, for the conversion of one hundred and eighty bonds of the city of Troy, for the payment *to bearer* of the sum of one hundred dollars each, in ten annual installments, with interest at eight *per cent. per annum* from date, the 13th January, 1869. In December, 1869, eighty of these bonds were by the plaintiff deposited with his son-in-law, one M. B. Locke, who was a merchant, banker, and factor, residing and doing business at Union Springs, the place of plaintiff's residence. The remaining one hundred bonds had been deposited for plaintiff with the firm of Epping & Howard, of Columbus, Georgia, on the 27th of December, 1869; an order to them was given him, for their delivery, which he indorsed as follows: *"Please deliver to M. B. Locke, or order;"* signed "H. BLACKMAN." The eighty bonds were left with Locke for safe-keeping, and the order for the others indorsed to him that he might get them for the same purpose. Locke was directed to ascertain on what terms the plaintiff could raise money on the bonds, but was not authorized to dispose of them in any manner whatever. He was largely indebted to Lehman Brothers, of New York. The defendants, Lehman, Durr & Co., a firm in Montgomery, two of the members of which were members of the firm of Lehman Brothers, through one Mitchell, undertook the settlement of this indebtedness. The indebtedness of Locke amounted to about thirty thousand

dollars. He conveyed to the defendants real estate, valued at twenty thousand dollars, and transferred by delivery the one hundred and eighty bonds of the city of Troy; and the defendants gave him their drafts on Lehman Brothers, for thirty thousand dollars, which he used in paying his indebtedness to them. These drafts were by the defendants credited to Lehman Brothers, and they charged the defendants with them. Locke gave the defendants a sale-bill of the bonds, but they were not indorsed by the plaintiff, or any one else. The defendants had no notice of the plaintiff's right or claim to the bonds, when they obtained them from Locke, which was on the 13th April, 1870. The value of the bonds, and a demand of them before the commencement of this suit, was proved. The instructions given by the City Court, in substance, deny that on this state of facts the plaintiff could recover.

These bonds were issued by the city of Troy, a municipal corporation created by the laws of this State, under the authority of an act of the General Assembly, approved December 8th, 1868, by which the city was authorized to subscribe a sum, not exceeding seventy-five thousand dollars, to the capital stock of the Mobile and Girard Railroad, and to issue bonds, bearing eight *per cent.* interest, in payment of such subscription. The act declares, "None of said bonds, or interest thereon, shall be due or payable, until said railroad is in running order, and the cars run to said Troy."—Pamph. Acts 1868, pp. 395-7. The bonds refer to this act, and in one part recite, "Payments to commence at the date of the completion of said railroad to Troy, Alabama"; and in another, that payments are to be made in "ten annual installments, together with the interest thereon that may have accrued thereon, on demand, after the completion of the Mobile and Girard Railroad, to the said town of Troy, Alabama; payments to be made at the office of the treasurer of the town of Troy, Alabama." On the 20th January, 1870, two acts of the General Assembly were approved; the one legalizing the subscription of the city to the railroad, and the bonds issued in payment of it; and the other providing for the payment of the bonds, by the real-estate owners of the city, *as the same shall fall due.*—Pamph. Acts 1869-70, pp. 39-42.

"It is a principle, almost universal in its application, that no man's property can be taken from him without his consent, express or implied, except by due process of law. The maintenance of the principle is essential to the peace and safety of society; and the insecurity which would follow from any departure from it would cause far greater injury, than any which can fall, in cases of unlawful appropriation

of property, upon those who have been misled and defrauded."—*Telegraph Co. v. Davenport*, 97 U. S. 369.

In England, there is a deviation from the principle, in cases of sales made in *market overt*.—3 Black. 172 ; Benjamin on Sales, 7. This deviation is not recognized in this country ; and the general maxim of our jurisprudence is, *Nemo in alium potest transferre plus juris quam ipse habet*.—Hilliard on Sales, 23 ; *Williams v. Merle*, 11 Wend. 80 ; *Leigh Brothers v. M. & O. R. R. Co.*, 58 Ala. 165.

An exception to this rule, firmly established, is that of negotiable or commercial paper, transferrable by delivery. The holder of bank-notes, bills of exchange, promissory notes, the ordinary coupon bonds of corporations, or of the State, or of the United States, passing by delivery, transferring them before dishonor, for value, to a *bona fide* purchaser, though he may have obtained them feloniously, or fraudulently, or though he may by the transfer exceed his authority, or violate trust and confidence reposed in him, can confer a title he has not, or greater than he had,—a title freed from all infirmity, and which will prevail over that of the true owner.—*Rumball v. Metropolitan Bank*, 20 Eng. (Moak's ed.) 276 ; *Murray v. Lardner*, 2 Wall. 110 ; *State of California v. Wells, Fargo & Co.*, 15 Cal. 336 ; *Spooner v. Holmes*, 102 Mass. 503 ; *Welch v. Sage*, 47 N. Y. 143 ; *Seybel v. National Bank*, 54 N. Y. 288. The exception is founded on the commercial policy of sustaining the credit and circulation of negotiable paper.—3 Kent, 79. It applies only to paper of that character. As to all other paper, an assignee, or transferree, succeeds to, and is clothed with, the rights only of the transferror or assignor.

A bill, or note, or other instrument, cannot fall within the operation of this exception, nor is the transferree thereof entitled to protection against the right or title of the true owner, unless it is payable absolutely and unconditionally. The rule is thus stated in Chitty on Bills : "The money must be payable at all events—not dependent on any contingency, either in regard to event, or with regard to the fund out of which payment is to be made."—Chitty on Bills, 134, marg. The rule applies to all kinds of commercial paper. In reference to a promissory note, it is stated, "to make a written note for the payment of money a valid promissory note, the money must be payable absolutely, and at all events, and not be subject to any condition or contingency."—Story on Prom. Notes, § 22.

Whether an instrument is commercial—is of the character entitling it to the peculiar protection afforded by the law to paper of that kind—must appear on its face, or a contem

poraneous memorandum on the same paper. Its character depends upon its terms at the time it is made ; and if it then purports a payment to be made upon a contingency, or a condition, or uncertain event, the subsequent happening of the event or contingency will not change it.—Story on Prom. Notes, §§ 22-24.. The reason of the rule, it was well said by Lord KENYON, in *Carlos v. Fancourt*, 5 Term, 483, is, "that it would perplex the commercial transactions of mankind, if paper securities of this kind were issued out into the world incumbered with conditions and contingencies, and if the parties to whom they were offered in negotiation were obliged to inquire when the uncertain events would probably be reduced to a certainty." And in the same case,. ASHURST, J., said : "Certainty is a. great object in commercial instruments ; and unless they carry their own validity on the face of them, they are not negotiable. On that ground, bills of exchange which are payable only on a contingency are not negotiable, because it does not appear on the face of them whether or not they will ever be paid. The same rule, then, that governs bills of exchange in this respect, must also govern promissory notes."

In *Cota v. Buck*, 7 Metc. 588, it is said by C. J. SHAW, that "the true test of the negotiability of a note seems to be, whether the undertaking of the promissor is to pay the amount at all events, at some time which must certainly come, and not out of a particular fund, or upon a contingent event. If it were payable on a contingency, or out of a particular fund, it would not be negotiable." A note, promising to pay a certain sum of money for staves, at two dollars a thousand, subject to a deduction for any number not procured, is not a promissory note.—*Martin v. Woodall*, 1 St. & Port. 244. A note payable to bearer, six months after date, for a certain sum, *provided the ship may arrive at an European port of discharge, free from capture and condemnation by the British*, is not a promissory note.—*Coolidge v. Ruggles*, 15 Mass. 387. An order for the payment of fifteen hundred dollars, "*at sight, after the arrival and discharge of coal by brig G, to the order of myself*," is not a bill of exchange. *Grant v. Wood*, 12 Gray, 220.

The principle on which these, and numerous decisions rest, is, that no instrument is commercial—is a bill of exchange, or a promissory note—unless it is payable at all events. If payment depends on a contingency, which may never happen, it is not commercial. But, if the event must certainly happen, the uncertainty of time when it will happen will not render the instrument a mere special agreement or contract. . The time of payment may be in suspense, and

may so continue, indefinitely; but, if it will inevitably happen, and the instrument has the other requisites, it will be regarded as a promissory note or bill of exchange.—*Lockett v. Palmer*, 25 Barb. 179.

The bonds of a municipal corporation, or of a private corporation, having authority to issue them, payable to bearer, or order, are commercial, or negotiable, if they have the essential requisites of negotiable paper. Though sealed instruments find their recognition, validity and operation in the ancient rules of the common law, while bills of exchange and promissory notes find their origin and sanction and peculiar characteristics in the law-merchant, or in statutes intended to facilitate their circulation; the bonds of. corporations, though under seal, after some vacillation of judicial decision, come to be recognized as on an equality with bank-notes and bills of exchange. A full collection of the authorities, State and Federal, will be found in 1 Waite's Actions & Defenses, 688. But, like bank-notes, or bills of exchange, or promissory notes, they must, in themselves, contain every essential requisite of negotiability. Where these are found in them, although they may be under the corporate seal, as every act of a corporation must have been manifested according to the ancient common law, the seal will not destroy their negotiability. But the seal will not confer negotiability, unless these requisites are found. Corporations may contract on conditions, or uncertain events, or on contingencies, as well as absolutely, and unconditionally; and if they do, such contracts have the same operation as the like contracts of individuals.

Without the aid of a special statute, the original act of incorporation not conferring the power, the city of Troy could not have issued negotiable paper.—*Police Jury v. Britton*, 15 Wall. 566; *N. M. & C. R. R. Co. v. Dunn*, 51 Ala. 128. Whether the power should be conferred, rested in the legislative discretion. While the legislature conferred on the city the power to subscribe to the capital stock of the Mobile & Girard Railroad, and to issue bonds to pay the subscription, it is expressly provided that "none of said bonds, or interest thereon, shall be due or payable, until said railroad is in running order, and the cars run to Troy." The bonds stipulate expressly on their face, that until this event happens, neither the bonds, nor the interest thereon, is payable. This is not an event which it can be said would certainly happen; not mere doubt, suspense as to the time of its happening, but uncertain whether it would happen; as uncertain as when a ship would arrive from sea, or discharge her cargo. The city was authorized to subscribe to the stock of the rail-

road corporation, not so much for the benefits which would accrue from membership in it, or for the dividends which would be derived from the ownership of the stock. Such considerations would probably influence individuals; but a public corporation, created mainly for governmental purposes, would be authorized to make such a subscription, because of the incidental advantages to be derived from the completion of the road to its locality—the improved facilities for transportation and travel to and from it—the apprehended increase of its business, its trade, and industries. That payment for the stock should depend upon the completion of the road to the city, is a provision inserted in the bond for the protection of the city, and inserted in obedience to the command of the statute. The legislature did not confer power to issue negotiable paper—it did not intend that such power should be exercised. When the railroad was completed, yielding to the city the advantages and benefits contemplated, and which was the consideration moving the legislature to confer the power to subscribe for the stock, then the bonds were to be payable. The bonds are wanting in the essential element of negotiability, certainty of time of payment. Not being negotiable according to their terms, they could not become so by matter *ex post facto*. The subsequent completion of the railroad cannot change the character impressed on them at the time they were made.—*Kelly v. Hemmingway*, 13 Ill. 604; Story on Prom. Notes, § 22.

Bills of exchange, promissory notes, or other negotiable paper, must be certain, not only as to the engagement to pay, the amount payable, and the fact or event of payment, but they must be certain as to the payee. "It is equally essential," says Judge STORY, "that the person, to whom the note is payable, should be clearly expressed, and made known upon the face of the note; for parol evidence is not admissible to show to whom it is payable; and in instruments designed for circulation, it is of the highest importance to know, to whom its obligations apply, and from whom a title can be securely derived."—Story on Prom. Notes, § 35. The payee need not be named, but on its face the instrument must afford an indication or designation by which he can be certainly ascertained; the maxim applying, *Id certum est quod certum reddi potest.*—1 Dan. Neg. Instr. § 99. A bill may be drawn and negotiated, with a blank left for the name of the payee. Such a bill imports an authority from the drawer to a *bona fide* holder, to fill the blank with his own name; and such holder, perfecting the bill, may recover of the drawer.—Chitty on Bills, 156; *United States v. White*, 2 Hill, 57.

[Blackman v. Lehman, Durr & Co.]

In England, and in many of the States, a bill may be payable to bearer only; and then it becomes a promise to pay whoever may be the holder, and title to it will pass by mere delivery. So, if it is payable to A. B. or bearer, title will pass by delivery. Whether notes or bills, so framed, are negotiable, depends on the law of the place in which they are made and payable. It is within the sovereign power of each State, not offending the inhibition of the Federal constitution, by laws impairing the obligation of contracts already made, to regulate the making, construction, and validity, formalities and authentication of contracts, which are entered into, or to be performed within its territory. The legislature may enlarge, or may diminish, the character of paper which is negotiable—may add to or deprive it of the characteristics and qualities which distinguish it from other contracts.

We have statutes, which not only define the particular instruments which are governed by the commercial law, but change and modify many of the rules of that law. Bills of exchange, and promissory notes, payable in money at a bank or private banking-house, or a certain place therein designated, are the only instruments, which, under our statutes, are subject to the commercial law. Bank-notes, intended to circulate as money, would also be subject to that law; for these, as well as bills of exchange, and promissory notes, payable at a bank or banking-house, are exempt from set-off, discount, or payment, had or possessed previous to notice of transfer. It is expressly declared, that "all bonds, bills or notes, except those issued to circulate as money, payable to any thing or bearer, to any fictitious person or bearer, or to bearer only, must be construed as payable to the person from whom the consideration moved; if payable to an existing person or bearer, must be construed as payable to such person or order."—Code of 1876, § 2093. The original of this statute was entitled "an act to prevent fictitious suits in the courts of the United States;" and it will be found in Clay's Digest, 326, §§ 326-7. It was first construed in *Clark v. Field*, 1 Ala. 468, in which it was held, that under its operation, the legal title to a promissory note payable to *S. W B, or bearer*, could not be derived otherwise than through the indorsement of the payee, *S. W. B.* In *Kemper and Noxubee N. & B. v. Schieflin & Co.*, 5 Ala. 473, it was held not to extend to bank-notes. In *Sawyer v. Patterson*, 11 Ala. 523, it was decided the statute did not extend to a blank indorsement, or an indorsement to bearer.

Such was the construction the statute had received prior to the Code of 1852. Into that Code it was introduced, in its present form. It is of frequent occurrence in that, and

the present Code, that in the re-enactment of pre-existing statutes, the construction which judicial decision had placed upon them was embodied, or that the words of the statute were changed so as to conform to that construction. In this statute, we now find that bills or notes *issued to circulate as money* are excepted from its operation. These are still, as by the law-merchant, if payable to bearer, deemed payable to every holder thereof, and the legal title passes by delivery. Such was the construction of the former statute. The former statute declared instruments payable to any person, or to any corporation, or bearer, should have the effect of creating an obligation or liability in favor only of the person or corporation, to whom it was expressly payable. It may well be doubted whether the former statute embraced any instrument payable to *bearer* only. The present statute embraces not only such an instrument, but every instrument (except bills or notes issued to circulate as money) which is payable to any thing, or to any fictitious person, *or bearer;* and such instruments are not to be construed as payable to whoever may be the holder, but *to the person from whom the consideration moves.* If payable to an existing person *or bearer,* then it is construed as payable to such person, or order. The policy of the statute is to deprive instruments of negotiability, which do not on their face clearly indicate to whom their obligations apply, and from whom title can be securely derived ; that title to negotiable instruments, which prevails over the title of the true owner, or over the equities of the original parties, shall be derived only by an indorsement in writing from him to whom they are expressly payable. Such, it is said by Judge STORY, was at one time the law of France ; because it was found that bills of exchange, payable to bearer only, or in which a blank was left for the name of the payee, became a cover of fraud and usury. Story on Prom. Notes, § 38.

These bonds are payable to bearer only. If they had every other ingredient of negotiability, they could not, in obedience to the statute, be construed otherwise than as payable to the person from whom the consideration moved to the maker, when they were issued. So construing them, the legal title to them could be derived only through his indorsement. These are valid contracts, or engagements to pay money to the person from whom the consideration originally moved, on the happening of the event expressed in them. The legal title to them can be derived only through the indorsement or assignment of that person.— *Gookin v. Richardson,* 11 Ala. 889. Whoever obtains possession of them, without such assignment or indorsement, holds in subordination

to it, and in subordination to all prior rights and equities.

The possession of the plaintiff was sufficient to support the present action of trover, against the defendants acquiring possession, without title, from his bailee. The defendants are, equally with the bailee, from whom they obtained possession, estopped from denying the title of the plaintiff. *Lowremore v. Berry,* 19 Ala. 130; *Cook v. Patterson,* 35 Ala. 102; *Donnell v. Thompson,* 13 Ala. 440.

The result of these views is, that the City Court erred in charging the jury the plaintiff was not entitled to recover, if they believed the evidence, and in refusing to charge them, on request, that he was entitled to recover.

Let the judgment be reversed, and the cause be remanded.

STONE, J., not sitting, having been of counsel.