# Pollak & Co. *v.* Graves.

*Statutory Claim Suit for Horses.*

1. *Conveyance of wife's property.*—Property belonging to the statutory estate of a married woman, whether real or personal, can only be disposed of in the particular mode prescribed by the statute; that is, by the joint conveyance in writing of herself and her husband, attested or acknowl-edged as prescribed.

2. *Same; sale or exchange of horse.*—If the husband purchases a horse with money belonging to his wife's statutory estate, not taking the title to himself, the legal title vests in the wife; and a subsequent exchange of the horse for another, not consummated by writing signed by husband and wife jointly (and attested or acknowledged), though made with the assent of the wife, does not divest her title to the first horse, nor vest in her any title to the second.

3. *What will support claim suit.*—On the trial of a statutory claim suit, the claimant must recover, if at all, on the strength of his own title; and it being shown that, at the time of the levy, the property was in the pos-session of the defendant in the writ, the claimant can only repel the pre-sumption of ownership, arising from such possession, by showing title in himself, or by connecting himself with the outstanding title of a third person.

4. *Purchase by husband, for wife; title not passing to her.*—If the hus-band buys personal property at the request of the wife, but pays the price with money borrowed by him on his own credit, the title vests in him, not in his wife; and the subsequent re-payment of the borrowed money, with money belonging to the wife's statutory estate, does not change the title, nor create in the wife any interest in the property which she can assert at law as against his creditors.

APPEAL from the Circuit Court of Lowndes.

Tried before the Hon. JOHN MOORE.

This was a statutory trial of the right of property in two horses, on which an execution was levied in favor of Pollak &

[Pollak & Co. v. Graves.]

·Co., against M. A. Graves, and to which a claim was interposed by Mrs. Dolsica R. Graves, the wife of the defendant in execution. The plaintiffs' judgment was rendered on the 3d November, 1881, and was founded on the defendant's promissory note dated April 3d, 1880. The execution was levied on March 13th, 1882, on the two horses now in controversy, which were described in the levy as "one grey horse, named *George*, and one sorrel mare, named *Lillie*." On the trial of the claim suit, as the bill of exceptions recites, the plaintiffs proved their judgment and execution, the date of the note on which the judgment was founded, the levy of the execution on the horses, "which were at that time in the possession of said M. A. Graves," and their value; "but the same witness testified, also, that said M. A. Graves had always declared that the horses belonged to his wife, the claimant in this suit." The plaintiffs then examined said M. A. Graves as a witness, "who testified that the title to the two horses was derived as follows: In November, 1880, witness purchased at the request of his wife, from one Hinson, who owed her moneys belonging to her statutory estate, a black horse; promising at the time, by the expressed wish of his wife, to credit the price of the horse on such indebtedness, which was afterwards done. In April, 1881, with the consent and approval of his wife, witness traded said black horse, to one Belgart, in exchange for the grey horse *George*, and informed said Belgart that the black horse belonged to his wife; but no written contract of sale or exchange, nor any writing whatever in regard to such exchange, was made—the same being a verbal trade, consummated by delivery only. The said mare *Lillie* was purchased at the request of claimant, in January, 1881, from a drover, and paid for with money borrowed by witness from one Tyson, promising to repay it out of moneys belonging to his wife's statutory estate, when he should collect them from said Hinson,—which was afterwards done; all of which was understood and assented to by his wife. Both horses were traded for, as here set forth, with the consent and approval of witness' said wife, and were turned over to her; and witness never claimed title to them, but claimed only the use, and did use them; and both horses were procured, as set forth, after the debt of witness to said plaintiffs was contracted, but before judgment was rendered thereon. This was all the evidence in the case, and there was no conflict in the evidence."

The court thereupon charged the jury as follows: 1. "If the jury believed, from the evidence, that the grey horse was procured by the exchange of the black horse belonging to the claimant's statutory estate; and that the exchange was made by claimant's husband, with her knowledge, consent, and approval, and that the grey horse was delivered to the claimant, and was

never claimed by her said husband, the defendant in execution, but was claimed by her; then they must find that said grey horse was not subject to plaintiffs' execution, although they might also believe, from the evidence, that said contract of exchange was verbal only, and was made after plaintiffs' said debt had been contracted." 2. "If the jury believed, from the evidence, that the mare *Lillie* was purchased in January, 1881, with money borrowed by claimant's said husband from Tyson, on his promise to repay Tyson out of moneys, the statutory separate estate of his said wife, afterwards to be collected; and that said arrangement was made with the consent and approval of his wife, the present claimant; and that he did so repay said Tyson with such moneys when collected, and turned said mare over to said claimant, and never claimed any interest in her, but only the use; then they must find said mare not subject to plaintiffs' execution." The plaintiffs excepted to each of these charges, and requested others, instructing the jury that, if they believed the evidence, they must find each of the horses subject to the execution; which charges the court refused, and exceptions were reserved to their refusal.

The charges given, and the refusal of the charges asked, are now assigned as error.

SAYRE & GRAVES, with W. R. HOUGHTON, for appellants. The exchange of the black horse for the grey, by verbal contract only, did not divest the claimant's title to the former, nor vest in her any title to the latter.— *Williams v. Auerbach*, 57 Ala. 90; *Evans v. English*, 61 Ala. 424. The mare was purchased by the claimant's husband, and paid for with money borrowed by him for the purpose. This was the husband's debt, though he may have promised to pay out of his wife's money; and the lender could not have subjected the wife's property to its payment. The subsequent use of the wife's money in paying the debt did not change the legal title to the property, which vested in the husband from the time of its delivery.— *Crutcher v. Taylor*, 66 Ala. 216.

COOK & ENOCHS, *contra.*—The legal title to each of the horses was vested in the claimant, and the marital rights of her husband never attached to either. Each was bought for the wife, and was paid for with her money or property; and the husband always recognized her right, and disclaimed any interest in himself.—*Daffron v. Crump*, 69 Ala. 77; *Smith v. Whitfield*, 71 Ala. 106; *Machen v. Machen*, 38 Ala. 364; s. c., 28 Ala. 374.

BRICKELL, C. J.—Under the statutes, a married woman takes and holds property to her sole and separate use, having

[Pollak & Co. v. Graves.]

therein a legal estate. But upon her the statutes do not confer a general power to dispose of such property. The power of disposition is limited, and is confined to the specific mode the statutes prescribe. The joint conveyance in writing of herself and husband, attested or acknowledged, is the only mode of disposing of such property that will operate to divest her title, whether a sale is intended, or an exchange—the bartering one article of personal property for another.—*Smyth v. Oliver*, 31 Ala. 39; *Whitman v. Abernathy*, 33 Ala. 154; *Warfield v. Ravisies*, 38 Ala. 518; *Bolling v. Mock*, 35 Ala. 727; *Evans v. English*, 61 Ala. 416; *Williams v. Auerbach*, 57 Ala. 90. The black horse, having been purchased with the moneys of Mrs. Graves, was her separate property. In making the purchase, the husband may have been the active agent; but it was within the line of his duty as trustee to invest the money of the wife, and having invested it in the purchase of the horse, not taking title to himself, the legal title enured directly to the wife. The exchange of the horse subsequently, though with the assent of the wife, not having been consummated by the joint transfer in writing of herself and husband, attested or acknowledged, did not divest her legal title, nor clothe her with title to the mare received in exchange. In the absence of statutes otherwise requiring, the title to personal property may be created or divested without writing. The effect of the statute enabling husband and wife to dispose of the separate statutory estate of the wife, not distinguishing between real and personal property, or between things in possession and things in action, is, that the title of the wife can not be divested without writing, whatever may be the kind or species of the property. If Mrs. Graves has an election, either to reclaim the black horse, or to ratify the exchange and take the mare, it is by virtue of the doctrine of implied or constructive trusts, of which a court of equity only can take cognizance and enforce.—*Bolling v. Mock, supra; Evans v. English, supra.* The title to the grey mare not having vested in Mrs. Graves, her claim can not be supported. A claimant, in a trial of the right of property, must recover upon the strength of his own title, and not upon the weakness or want of title in the defendant in execution or attachment. When it is shown by the plaintiff that, at the time of the levy, the defendant had possession of the property, a presumption of ownership arises. The presumption can be repelled only by the claimant proving title in himself, or connecting himself with the true title, if it be not in the defendant. It is immaterial to him whether the defendant has title, or whether it resides in a stranger.—2 Brick. Dig. 480, § 67. The mare may not be the property of the husband. The person with whom the exchange was effected

may have a right to rescind it.    If this be true, it will not aid Mrs. Graves' claim.

The mare Lillie was purchased by the husband, with money he had borrowed on his own credit.    The fact that the purchase was made at the request of the wife, is unimportant. She has not the capacity to contract for the purchase of property, or to acquire and hold it by purchase, unless the consideration of the purchase is derived from her statutory separate estate.    The subsequent payment by the husband of the money he borrowed to make the purchase, with the moneys of the wife, rendered him the debtor of the wife, but it did not create any trust of the title to the mare.    The title vested in him on the purchase, and the mare became subject to the payment of his debts.

From what has been said it follows, that there was error in the rulings of the court below; and the judgment must be reversed, and the cause remanded.