[Steiner Bros. & Co. v. Tranum.]

# Steiner Bros. & Co. *v.* Tranum.

*Action of Trover for the Conversion of a Horse.*

| | |
|---|---|
| 98 | 315 |
| 102 | 472 |

| | |
|---|---|
| 98 | 315 |
| 105 | 75 |
| 105 | 199 |

| | |
|---|---|
| 98 | 315 |
| 109 | 108 |

| | |
|---|---|
| 98 | 315 |
| 115 | 555 |

| | |
|---|---|
| 98 | 315 |
| 118 | 624 |
| 119 | 320 |
| 119 | 662 |

| | |
|---|---|
| 98 | 315 |
| 120 | 672 |

| | |
|---|---|
| 98 | 315 |
| 142 | 710 |

1. *Subscribing witness; when proof of, not necessary.*—The testimony of a subscribing witness is not necessary to prove the execution of a promissory note, offered in evidence of the ownership of personal property, for which it was given in part payment. It is not a muniment of title, but a mere circumstance of the purchase;—merely incidental to the main issue.

2. *Ownership of personal property; a fact of which a witness may testify.*—Ownership of personal property is a fact to which a witness may testify; and on cross-examination, may be required to state facts on which claim of ownership rests.

3. *Specific objection to evidence.*—When a question calling for the conclusion of the witness, is objected to as illegal, without alleging special grounds of illegality; or, upon other special grounds, not raising the point that the conclusion of the witness is called for, the court is justified in ruling only upon grounds specially pointed out.

4. *The right of the husband to exchange the separate personal property of the wife for other property.*—Under the married woman's law of Feb. 28, 1887, the husband may exchange or barter the separate personal property of the wife, or sell, or otherwise dispose of it, with the consent of the wife expressed in writing, or orally. And, that consent may be expressed by subsequent ratification.

5. *Price brought at forced sale not evidence of real value.*—When personal property is taken from its true owner and sold at a forced sale, without his consent, the price brought is not legal evidence, as to him, of its real value.

6. *Conversion by co-tenant.*—A sale of the entire property in a chattel by one tenant in common is a conversion, for which trover may be maintained by his co-tenant.

APPEAL from Butler Circuit Court.

Tried before Hon. JOHN P. HUBBARD.

This action was brought by the appellee, Tranum, against the appellants, to recover damages for the alleged conversion by them, of a cream-colored horse; and, was commenced on the 19th of March, 1892. It was shown on the trial, that the plaintiff, Tranum, about the middle of January, 1892, had gotten the cream horse, in controversy, from one M. A. Russell, by giving a mule and twenty-five dollars in exchange for it. Five or six days afterwards, Tranum gave his note for twenty-five dollars, payable Oct. 1, 1892, to Mrs. M. A. Russell, the wife of said M. A. Russell. In March, 1892, appellants seized this horse while in the possession of appellee, claiming it under a mortgage that had been executed to them by M. A. Russell, prior to his trade with appellee. The

[Steiner Bros. & Co. v. Tranum.]

trial involved the right of property to the horse. It was the contention of the plaintiff that the horse belonged to Mrs. Russell, and that she had parted with her title to it, by the trade above stated. The defendant objected to the testimony offered by the plaintiff, testifying in his own behalf, that he executed his note for twenty-five dollars to Mrs. Russell, on the ground, that the note itself should be produced. The objection was overruled by the court, and the defendant excepted. The plaintiff testified that the husband of Mrs. Russell was present when she made the trade with plaintiff. The value of the horse, according to plaintiff, was $150.00. M. A. Russell was examined as a witness for the plaintiff, and testified, "that his wife owned the horse." The defendant objected to this evidence on several grounds; chiefly, that it was the real question to be determined in the suit, and, that it was a conclusion to which the witness should not be permitted to testify. The court overruled the objection, and the defendant excepted. This witness stated that he had traded some mules with one Scott, in 1890, for this and another horse; that his wife was not present when this trade was made, in Montgomery, but, that she consented to it when he got back home. The defendant objected to the testimony about his wife "consenting to the trade, when he got home," because it was illegal; because the property traded was not the property of the wife; because the cream horse did not become the property of the wife; because, the subsequent assent of the wife, after the trade had been made, could not vest the wife with the title to this horse. The court overruled these objections, and the defendants excepted.

Witness then produced in evidence the note for $25.00, executed by the plaintiff to his wife, which was witnessed by one A. C. Jones. The defendants objected to the introduction of this note without the proof of its execution by said subscribing witness. The court overruled the objection and defendants excepted. The value of the cream horse as testified to by this witness was about $130.00. There was other evidence that the market value of the horse was $60.00 to $75.00. This witness testified at great length, how he had acquired the horses and mules he had gotten in various trades, up to his possession of the mules he had traded for this horse in controversy. The opinion so fully sets out the facts relating to the further progress of the trial, that they will not be here repeated. The defendants requested the following written charges, viz: 2. "That if Russell traded two mules and $40.00 for two horses, and one of the

[Steiner Bros. & Co. v. Tranum.]

horses was the one in controversy, and you further find that one of the mules so traded was acquired by Russell from Dr. Jones, for corn raised by Russell in the year 1889, then Mr. and Mrs. Russell would be joint owners of the horse in controversy, and the plaintiff can not recover."

3.   "That if you find from the evidence, that Mr. Russell obtained one of the mules from the stock derived from Dr. Jones, for which he paid corn, raised by him, Russell; and, the other mule was derived from stock traded, or derived from a yoke of oxen, of Mrs. Russell; and, you further find that Mr. Russell paid $40.00 in money and the two mules for the two horses, then Mr. and Mrs. Russell would be the joint owners of the two horses, and the plaintiff can not recover in this action."

4.   "If you find that the property of Mr. and Mrs. Russell paid for the cream horse, your verdict should be for the defendant."   The court refused each of these charges, and the defendants separately excepted, and take this appeal. There are twenty-seven grounds of error assigned, based upon the exceptions reserved to the rulings of the lower court, and which are noted in the opinion rendered by this court.

J. C. RICHARDSON, for appellants.

1.   That the execution of the $25.00 note offered in evidence should have been proved by the subscribing witness, citing *R. R. Co. v. Jones*, 92 Ala. 226; *Patterson v. Kicker*, 77 Ala. 408; *Jinks v. Terrell*, 73 Ala. 238.

2.   Upon the assessment of damages in trover.—*Curry v. Nelson*, 48 Ala. 638; *Loeb v. Flash*, 65 Ala. 526.

3.   Upon ratification by wife.—5 Am. Rep. 531; 19 Am. & Eng. Enc. 970.

4.   Transferree of mortgage after law day.—*Downing v. Blair*, 75 Ala. 219.

5.   On other points.—68 Ala. 378; 67 Ala. 526; 59 Ala. 597 and 76 Ala.; *C. R. & B. Co. v. Lampley*.

M. W. RUSHTON, for appellee, cited *Waters v. Spencer*, 22 Ala. 460; *Brooks v. Hildreth & Mosely*, 22 Ala. 459; *Whitsett, Garner & Co. v. Slater*, 23 Ala. 626; *McKenzie v. Branch Bank at Montgomery*, 28 Ala. 606; *Knight's Adm'r v. Vardemur*, 28 Ala. 262; *Tarleton & Pollard v. Johnson*, 28 Ala. 300; *Hudson & Stokes v. Weir & Tate*, 29 Ala. 294; *Diggs v. State*, 49 Ala. 311; *Hart v. Bray*, 50 Ala. 446; *Smith v. Fellows*, 58 Ala. 467; *Durr v. Jackson*, 59 Ala. 203; *McCrary v. Rush*, 60 Ala. 374; *Callan v. McDaniel*, 72 Ala. 96; *Hodges v. Coleman*, 70 Ala. 103.

HEAD, J.—Trover by appellee, Tranum, against appellants, Steiner Bros. & Co., for the conversion of a horse. Appellants, Steiner Bros. & Co., took the horse from the possession of appellee, Tranum, under a mortgage executed to them by M. A. Russell. Tranum claimed to have purchased and acquired possession from Mrs. M. A. Russell, the wife of said M. A. Russell. His purchase was subsequent to the execution and registration of Steiner Bros & Co.'s mortgage. The sole controversy was whether the horse, when the mortgage was executed, was the property of M. A. Russell, or of his wife. We will dispose of the assignments of error as they are presented and insisted upon in the brief of appellant's counsel.

1. The plaintiff testified that about the middle of January, 1892, he traded a mule to M. A. Russell for the horse in controversy, and was to give $25.00 boot; that five or six days after the trade he executed his note to Mrs. Russell for $25.00. The defendant's objections to secondary evidence of this note, if well taken, were obviated by the subsequent introduction of the note itself.

2. The defendants objected to the introduction of the note because its execution was not proved by the subscribing witness, that proof being made by the testimony of Mrs. Russell and the plaintiff. The plaintiff's alleged purchase and acquisition of title from Mrs. Russell rested in parol. The note he executed to her was not a muniment of his title, but was a mere circumstance of the purchase, showing in connection with the other evidence, the consideration of the purchase, and how it was evidenced or paid. The note was incidental merely to the main issue, and it was not necessary to call the subscribing witness to prove its execution.

3. Ownership of personal property is a fact to which a witness may testify. On cross-examination, such witness can be required to state the particular facts, on which the claim of ownership rests.—*Daffron v. Crump*, 69 Ala. 77 ; *Nelson v. Iverson*, 24 Ala. 9. There was no error, therefore, in permitting Mr. and Mrs. Russell to testify to the latter's ownership of the horse in controversy, or of the property traded for the horse.

4. The horse sued for was acquired by an exchange of other stock, effected by M. A. Russell, with one Scott. The defendants introduced evidence tending to show that the property so given in exchange, belonged to Mrs. Russell. M. A. Russell was permitted to testify that his wife consented to the trade when he came home. Mrs. Russell was also asked, "When your husband brought the horse home from

Montgomery that he got from Scott, did you ratify the trade?" The defendant objected to this question on the following grounds: (1). Because it is illegal. (2). Because it is irrelevant. (3). Because her ratification could not vest title in her. (4). Because her ratification could not effect title. (5). Because her ratification could not effect plaintiff's title. The court overruled these objections and defendants excepted. The witness answered that she did ratify the trade. It will be observed that neither of these specific objections raises the point that the question called for the legal conclusion of the witness. The objection that it was illegal was general, and insufficient to apprise the court of the particular cause or ground of illegality. The court was, therefore, in ruling on the objections, justified in considering only those grounds specifically pointed out. The question then presented is, whether the wife's subsequent consent to, and ratification of, her husband's unauthorized barter or exchange of her separate personal property for other property, is effective to legalize the barter and vest title in her to the property received in exchange. Under our former system of laws regulating the separate estates of married women, this question was answered in the negative. Nothing less than the joint deed, in writing, of husband and wife was efficient to divest her of title. She could not ratify a sale or exchange of her statutory separate property made by the husband.— *Williams v. Auerbach*, 57 Ala. 90; *Reeves v. Linam, Ib.* 565; *Evans v. English*, 61 Ala. 416; *Pollak v. Graves*, 72 Ala. 347; *DeBardelaben v. Stoudenmire*, 82 Ala. 574. If the husband made an exchange of his wife's statutory separate property for other property, the title to that acquired vested in him, and passed to his mortgagee.—*Evans v. English, supra.* Was this rule modified by the new married woman's law of February 28, 1887, so that the wife's ratification of an unauthorized exchange made by the husband has the effect of validating the exchange? We think it was. Section 2348 of the Code of 1886, comprising a part of the act of February 28, 1887, provides that the personal property of the wife, or any part thereof, may be sold, exchanged or otherwise conveyed or disposed of by the husband and wife by parol, or otherwise. Manifestly, all that is required by this statute is the assent of both husband and wife to the sale or exchange; and it is not essential that such assent be manifested by any writing, or other particular mode. A fair construction of the statute does not require that both shall be actually present and jointly express their assent, at the time and place the sale or exchange is made. If one authorizes

the other to make the contract, and it is done in pursuance of that authority, there is the necessary assent of both. What may be authorizsed may be ratified. We hold, therefore, that it was competent for the plaintiff to prove the wife's subsequent consent to, and ratification of, the exchange made by her husband.

5. The defendants, on cross examination of Mrs. Russell, asked her what became of the other horse obtained from Scott. On objection by plaintiff, defendants' counsel stated that he expected to prove that the witness made claim to that horse just the same as she did to the horse in controversy. We are unable to see the legality or relevancy of the proposed testimony, and counsel do not indicate to us on the brief wherein it was legal or relevant.

6. It was clearly not competent to prove against plaintiff, who had purchased long before, that defendants made a settlement with M. A. Russell, and wife, and gave them credit on their demand for the horse, and that M. A. Russell, then claimed the horse as his own, in the presence of his wife and got credit for it. Plaintiff was not present, and his rights could not be affected by such acts and declarations.

7. What the horse sold for at forced public sale under a mortgage, in accordance with terms prescribed by other parties, and with which the plaintiff had no connection, is no legal criterion of value as against the plaintiff. The horse had been taken by the mortgagee from plaintiff's possession and the title was in dispute. Whether a purchaser, at such a sale, would acquire a title depended upon the determination of that dispute. It would be an unsafe rule which would permit the price at which the property sold, at such a sale, to be considered as evidence of its value.

It appears that M. A. Russell, and wife, executed a mortgage on the horse to one Jordan, on Nov. 17th, 1890, but it was not recorded and plaintiff had no notice of it at the time of his purchase. It was, subsequently to the conversion complained of, transferred to the defendants. It is too obvious for discussion that this mortgage exerts no influence whatever upon this case. The first charge requested by defendants was, therefore, properly refused.

The facts hypothesized in the second, third and fourth charges requested by the defendant, if true, do not constitute a bar to this entire action. If M. A. Russell, owned an interest in the horse, in common with his wife, or jointly with her, his mortgage to defendants passed that interest to them, and they thereby became, in effect, tenants in com-

[Little v. Lichkoff.]

mon with Mrs. Russell; and she having sold to plaintiff, which sale passed to him her interest, defendants became, in effect, tenants in common with plaintiff. A sale of the entire property in a chattel by one tenant in common, is a conversion, for which trover may be maintained by his co-tenant. *Smyth v. Tankersley*, 20 Ala. 212. These charges were therefore properly refused.

This disposes of the questions raised by the record. We are unable to relieve against the injustice which the verdict manifestly accomplished in this case. Evidently, the jury attached too great weight and importance to the general testimony of Mr. and Mrs. Russell, that she was the owner of the horse. Whilst, under our rulings, testimony of that character is admissible to serve a *prima facie* showing of ownership, yet, it is so admitted in view of the principle that the witnesses so testifying may be compelled, on cross examination, to state the facts, in detail, upon which the claim of ownership is based; and when, as in the present case, the general statement of ownership is overwhelmed by the facts given, in detail, by the same witnesses, we are at a loss to conceive how the triers of fact can disregard those facts and adopt rather the general statements of the witnesses; or how the court, if the exercise of its power over verdicts be invoked, can suffer such a finding to to stand. This record presents no proceedings for a new trial, and, of course, our revisory jurisdiction, in the matter of new trials, can not be exercised.

The judgment of the Circuit Court is affirmed.

Affirmed.