# First National Bank v. Nelson.

*Action against a Bank for Money Had and Received.*

1. *Bank checks; included in bills of exchange.*—Bank checks are included in the words "bills" and "bills of exchange," as used in the statutes of this State relating to commercial paper.

2. *Same; must be endorsed to pass legal title.*—A bank check which is payable to an "existing person or bearer," must, under the provision of the statute (Code, § 1761), be construed as if payable to such person or order, and the title to such check can be transferred only by the endorsement in writing by the person to whom it was expressly payable.

3. *Same; same; not affected by custom and usage.*—A custom or usage which contradicts the commands of a statute, can not be considered in determining the true construction of such statute; and the fact that by a general custom bank checks payable to an existing person or bearer, pass from hand to hand by delivery merely, and are regarded as payable to the holder without indorsement, can not affect the operation of the statute (Code, § 1761), which provides that such checks should be construed as if payable to the person designated or order.

4. *Same; bona fide purchaser for value.*—Where a check, which is made payable to an existing person or bearer, is passed to a bank by an insolvent debtor, without its being endorsed either by the person to whom it is made payable or by the said debtor, the crediting by the bank of the amount of the check to the account of the debtor delivering it, without more, does not constitute the bank a *bona fide* purchaser for value.

[First National Bank v. Nelson.]

5. *Same; how transferred when payable to a married woman.*—The transfer of a bank check which is payable to a married woman or bearer, is illegal and inoperative to pass her title to it, unless it is made with the consent both of the husband and wife by indorsement.

6. *Action for money had and received; when maintained by wife against one to whom personal property is transferred by the husband.*—To enable a married woman to maintain an action for money had and received against a person to whom her husband, assuming to act as. her agent, has delivered a check, which was made payable to the wife or bearer, in discharge of his own debt, it is not necessary for her to show that the husband is in default to her, and that he has not the means of indemnity in his hands.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN R. TYSON.

The action in this case was brought by the appellee, Margaret Nelson, against the appellant, the First National Bank of Montgomery, on March 8, 1893. The complaint contained two counts, which were as follows : 1st. "The plaintiff claims of the defendant ten thousand ($10,000.00) dollars for money received by the defendant on, viz., the 30th day of May, 1890, to the use of the plaintiff, which said sum of money, with interest thereon, is still unpaid." 2d. "The plaintiff claims of the defendant the further sum of ten thousand dollars which was received and collected by the defendant to the use of the plaintiff on, viz., May 30th, 1890, on a certain bank check which was drawn on said day by Moses Bros. & Co. on the Merchants & Planters National Bank of Montgomery for the sum of, viz., five thousand dollars payable to the plaintiff or bearer, which was the property of the plaintiff. Plaintiff avers that the defendant collected and received the amount of said check from said payer without the knowledge or consent of the plaintiff, and has failed and refused, and still fails and refuses, to pay the same, with interest thereon, to the plaintiff, and that said sum with interest thereon is unpaid." The defendant, by pleas, denied each and every allegation of the counts of the complaint. There is no dispute about the evidence in this case, the substance of which is sufficiently stated in the opinion.

Upon the cross-examination of Sam Marks, cashier of the Merchants & Planters National Bank, he testified that he had been engaged in the banking business for 11 years, and was acquainted with the custom and usage

of banks in this State in respect to the payment of checks drawn payable to a designated person or bearer. Counsel for defendant then asked the witness the following question : "If it had not been the custom and usage of such banks during that time to pay all checks drawn payable to bearer, or to a designated person or bearer, to the person by whom the same was presented?" The plaintiff objected to this question, the court sustained the objection, and the defendant duly excepted. The court at the request of the plaintiff instructed the jury as follows : "If the jury believe the evidence, they will find for the plaintiff for her demand, with interest from the date of the check." The defendant duly excepted to the giving of this charge, and also excepted to the court's refusal to give the general affirmative charge requested by it.

There were verdict and judgment for the plaintiff. The defendant appeals, and assigns as error the rulings of the court upon the evidence, the giving of the general affirmative charge for the plaintiff, and the refusal to give the general affirmative charge as requested by defendant.

TOMPKINS & TROY, for appellant.—1. That a check is governed by the commercial law, and where it is payable to a designated person or bearer, is considered as payable to bearer only so that the title passes by mere delivery, is so well settled as to need no argument to support the proposition.—1 Morse on Banking, § 393 ; *Conroy v. Warren*, 2 Amer. Dec. 156 ; *Williams v. Merle*, 25 Amer. Dec. 610, note.

2. A bank check, such as the one involved in this case, is not within the provisions of section 1761 of the Code of 1886. There is a difference between a bill of exchange and a check, and when the term bill or bill of exchange is used, it does not include a check.—1 Morse on Banking, § 380, p. 610, note ; § 363 ; *Salter v. Burt*, 20 Wend. 205; *Taylor v. Sip*, 30 N. J. 284 ; *Rothschild v. Corney*, 9 Barn. & Cress. 388 ; *Merchants Bank v. State Bank*, 10 Wall. 604 ; *Bull v. The Bank*, 123 U. S. 105 ; *Morrison v. Bailey*, 5 Ohio St. 13 ; *In re Brown*, 2 Story R. 502 ; *Way v. Towle*, 155 Mass. 374 ; *Minot v. Russ*, 156 Mass. 458 ; Byles on Bills, (7th Am. Ed.), pp. 13–18 ; Tiedeman on Com. Paper, §§ 430–440. Various laws of force at the

time of the passage of the act of which section 1761 is a codification, as well as many laws since passed, recognized that bills of exchange and checks are different instruments; and the distinction has been recognized in our statutes down to the present time. The legislature wherever it intended a law to apply to both bills of exchange and checks have used both words; thereby showing that the legislature did not consider that by the use of the words "bills of exchange" in a statute checks would be included.—Acts 1838–9, p. 93; Clay's Digest, 83; p. 92, § 8; 95, § 7; 103, § 8; Code of 1852, § 3152; Revised Code, §§ 3635, 3636, 3639; Code of 1876, §§ 4332, 4333, 4335; Code of 1886, §§ 3851, 3857, 3810. We must presume that as the legislature in the one set of laws expressly provides they shall apply to both bills of exchange and checks, and in the other uses only the words, "bills of exchange," they did not intend to include checks within the latter.—*Lehman v. Robinson*, 59 Ala. 219; *Bibb v. Hall*, 101 Ala. 79. This contention is borne out by repeated constructions placed upon the particular statute in question.—*Smith v. Branch Bank*, 7 Ala. 880; *Kemper & Co. v. Schieffelin*, 5 Ala. 393; *Blakeney v. Blakeney*, 6 Porter 109.

3. There are two well settled principles in the construction of statutes, which, in our opinion, exclude checks from the purview of the statute in question. It was certainly the right at common law of every holder of a check payable to bearer to transfer the title to it by a mere delivery of the check. If the construction contended for be correct, this right of so dealing with his property is taken from the citizen, and he is compelled now to endorse it, perhaps fastening a liability on himself by so doing, where before there would have been none. The statute then is both a derogation of the common law and an abrogation of the right of the citizen to contract with reference to this particular species of property just as he may see fit, which is an ordinary right. It imposes a restriction upon this ordinary right —it abrogates his right to sell by mere delivery. In such cases the rule is well settled, that the force of the statute shall not be extended by intendment, but its application shall be limited to those things which it clearly appears were within the legislative intent.—*Gunter v. Leckey*, 30 Ala. 591; *Collier v. Faulk*, 69 Ala. 58; *Ryan*

*v. Couch*, 66 Ala. 244; *Scaife v. Stovall*, 67 Ala. 237; *Beale v. Posey*, 72 Ala. 323; *Cook v. Meyer*, 73 Ala. 580; *Lanier v. Youngblood*, 73 Ala. 587; 23 Amer. & Eng. Encyc. of Law, 385. Statutes are not passed for the government of those skilled in the law and knowing the meaning of technical term. They are passed for the government of the whole people; and when a word is used in a statute, which has a popular signification, then it will be given that signification in construing it, and it will not be extended so as to include those things which it does not include in its popular signification.—*Quigley v. Gorham*, 5 Cal. 418; *In re Lammer*, 7 Biss. 269; *Ex parte Hillman*, 10 Ch. D. 622; *McGregor v. State*, 4 Tex. App. 599; *Lehman v. Robinson*, 59 Ala. 219; *Mayor v. Winter*, 29 Ala. 651; 23 Amer. & Eng. Encyc. of Law, 326; 1 Morse on Banking, § 389.

4. Where a statute has been in force for a long period of time, and has received the practical construction as shown by a long continued custom and usage of those engaged in the business to which it relates, and is acquiesced in by the legislature and courts, this is the highest evidence, that the statute is as it has been practically construed; and, therefore, the practical construction given to the statute in question for a long period of time, excluding checks from its operation, should not only be given great weight, but is properly considered by courts as being of controlling weight. This rule is fully sustained by text writers and judges.—Sutherland on Stat. Con., §§ 307–308; Sedgwick on Stat. Con., pp. 215–18; Lawson on Usages and Cus., pp. 462–7; *Chesnut v. Shane*, 47 Amer. Dec. 387; *In re Will of Warfield*, 83 *Ib*. 1; 23 Amer. & Eng. Encyc. of Law, p. 339.

5. Making checks payable to bearer is, and has been, a general custom that courts judicially know, just as this court judicially knew the custom of banks in the business referred to in the case of *Nat. Com. Bank v. Miller*, 77 Ala. 173.—Lawson on Usages & Cus., 50; 1 Greenleaf on Ev., § 5; *Clifton Ins. Co. v. Dye*, 87 Ala. 468; *Wetzler v. Kelly*, 83 Ala. 440; *Con. El. Lt. Co. v. People &c. Co.*, 94 Ala. 374; 3 Brick. Dig., 407, §§ 12, 13 18; *Burdine v. Grand Lodge*, 37 Ala. 478; 12 Amer. & Eng. Encyc. of Law, 165 and note 2; *Merchants Bank v. Hall*, 83 N. Y. 338; *British &c. Co. v. Tibballs*, 63 Iowa 468. "Judicial knowledge" is simply knowledge of the existence of a

fact, and not of its legal effect. But if the courts would not take judicial notice of such custom, then defendant certainly should have been allowed to prove it. Proof of such custom should have been allowed for another reason ; to show that in taking the check defendant acted in the usual course of business.

6. A bank receiving a check from a customer who is indebted to it and placing that check to his credit is, as is well settled, entitled to protection as a purchaser for value. Acquiring paper for value and acquiring it in the usual course of business, mean in the commercial law one and the same thing. Transactions such as are detailed in the evidence shown by this record are in the usual course of business in the settlement by a customer of his account with a bank. This has been expressly decided in a similar case, and is the logical conclusion arising from well settled principles. By giving credit to the customer upon its account, it surrendered its right to proceed against him, which was a present, existing right, and which it might have exercised on that very day.—2 Morse on Banking, 903, § 4 ; Tiedeman on Com. Paper, § 294 ; *Thompson v. Clydesdale Bank*, L. R. App. Cases, (1893), p. 282 ; *Thompson v. Sioux Falls Nat. Bank*, 150 U. S. 231. This court has, in several cases, limited the rule declared in the cases of *Loeb v. Peters*, 63 Ala. 243, and *Loeb v. Flash*, 65 Ala. 526. So that now, it is the settled law of Alabama that even in the case of a transfer of property, if it is accepted in the payment of a debt, the transferee is entitled to be be protected as a purchaser for value.—*Reid v. Bank of Mobile*, 70 Ala. 199 ; *Spira v. Hornthall*, 77 Ala. 137 ; *LeGrand v. Eufaula Nat. Bank*, 81 Ala. 123.

7. Conceding that the check involved in this case was not governed by the law merchant, and that the title did not pass to the defendant by delivery merely without endorsement, the plaintiff is not entitled to recover in this action. She can not recover unless she shows, that in addition to the fact that the defendant received her money knowing it to be hers, or the further fact that her husband, who was acting as her agent, had not accounted for money so applied, and that the plaintiff has not, in her hands, the means of indemnity.—*M. & M. Railway Co. v. Felrath*, 67 Ala. 189.

8. There is still another view of this case that would

prevent appellee from recovering. Her husband was her agent clearly for the purpose of receiving this money, and when received, held it as her agent. She knew at the time he received it that he had gotten it. She made no inquiry of him as to what he had done with it. By leaving the check in his hands, without questioning him as to what he had done with it, she necessarily expected him to invest it for her, and impliedly gave him the power to do so. The circumstances of his receiving the money for her, and of retaining it in his possession, without question are of such a nature as necessarily to produce the inference that she intended for him to do with the money, for her, what he did do, namely, to loan it out.—*Bradford v. Barclay*, 39 Ala. 33 ; *Gimon v. Terrell*, 38 Ala. 208. And in those cases where, naturally, the husband would be expected to contract through the agency of the wife, such as in their hire of servants, the purchase of family supplies and other acts of like nature, and where the wife would be expected to act through the agency of the husband, such as in the collection of her rents, the sale of her property, the carrying on of her farm and the investment of her money, the authority of the one to act as the agent of the other should be implied from very slight circumstances, even if it is not implied by law from the relation of the parties.—9 Amer. & Eng. Encyc. of Law, 837, 838, 839 ; 1 Parsons on Con., 371–2 ; *Walker v. Carrington*, 74 Ill. 446 ; *Bennett v. Stout*, 98 *Ib.* 47 ; *Coolidge v. Smith*, 129 Mass. 554; *Lavassar v. Washburne*, 50 Wis. 200 ; *Frieberg v. Branigan*, 18 Hun. 344.

9. But again : even if there should, under the circumstances, be no inference of an original authority on the part of the husband in this case to loan the money, there is a necessary implication that the wife knew that he had loaned it. As said above, she knew that he had received it, and she must have known that he had not kept it during all that time lying idle. She was either willing to trust its investment entirely to his discretion without inquiry as to its disposition, and to ratify any investment he made, or she knew what he had done with it. In the former case, she would be conclusively presumed to know what he had done with it. She had the means of knowledge, and she can not be permitted to say that she did not know.—16 Amer. & Eng. Encyc.

of Law, p. 790–3 and notes. Having kept silent she will be presumed to have ratified the act, as she has been held in the case of *Sayre v. Weil*, 94 Ala. 475, to have ratified an appropriation of her money by the husband for his own benefit. That being the law, *a fortiori*, she can ratify such appropriation by him when it is an investment in her name and for her benefit as in this case.—*Lee v. Fontaine*, 10 Ala. 755 ; *Field v. Farrington*, 10 Wall. 141 ; *Gold Min. Co. v. Rocky &c. Bank*, 96 U. S. 640 ; *So. Life Ins. Co. v. McCain*, 96 U. S. 84.

BRICKELL & GUNTER, for appellee.—1. A party claiming protection as a *bona fide* holder as against the true owner, must show that before maturity he acquired it for a valuable consideration, in the ordinary usual course of business.—*Reid v. Bank of Mobile*, 70 Ala. 199 ; *Connerly v. P. & M. Ins. Co.*, 66 Ala. 432 ; 1 Brick. Dig. 276, § 356 ; 3 Brick. Dig. 91, §§ 130, 131. A holder for valuable consideration is one acquiring negotiable paper before maturity by the payment of money, or giving for it other things of value ; or who cedes or forbears, or suspends his legal rights, or is induced to change his condition for the worse.—2 Amer. Lead. Cases, 223–245 ; *Connerly v. P. & M. Ins. Co.*, 66 Ala. 432. Taking negotiable paper in payment of a pre-existing debt, whether it be the debt of the party from whom it is received, or of a third person, is the giving or parting with value, entitling the party taking it to protection as a *bona fide* holder.—1 Brick. Dig. 276, §§ 346–48 ; *Fenouille v. Hamilton*, 35 Ala. 319 ; *Haden v. Lehman*, 83 Ala. 243. But there must be an actual, not a nominal payment ; from the transaction the creditor must have suffered detriment. If the payment be merely nominal ; if there be no more than is to be inferred from the mere crediting it in account, or from the ordinary transaction of accepting or receipting it in payment, the creditor is not entitled to protection as a *bona fide* purchaser.—*Phœnix Ins. Co. v. Church*, 81 N. Y. 218 ; *Potts v. Mayer*, 74 N. Y. 594 ; *Central Nat. Bank v. Valentine*, 18 Hun. 417 ; *Fulton Bank v. Phœnix Bank*, 1 Hall (N. Y. Sup. Ct.) 573 ; *Loeb v. Flash*, 65 Ala. 542.

2. While there are in some respects, differences and distinctions between checks and bills of exchange, yet, most usually a check is defined as an inland bill of ex-

change.—2 Dan. Neg. Ins., § 1566; Byles on Bills, (Sharwood's Ed.), 84; Story on Promissory Notes, § 487; *Rogers v. Durrant,* 140. U. S. 294; *McLean v. Clydesdale Banking Co.,* 9 App. Cases 95; *Moses v. Franklin Bank,* 34 Md. 574; *Eyre v. Waller,* 5 Hurlst. & Norm. 460; *Risley v. Phenix Bank,* 83 N. Y. 318.

3. It is argued, that by custom ordinary bank checks have not been deemed as falling within the influence of the statute; have been made and received payable to bearer, or as was this check, to an existing person or bearer, and that they have passed and pass by mere delivery without indorsement of any kind. If the existence of such custom were conceded we would submit that it falls within the established maxim of law: *"Malus usus est abolendus,"* an evil or invalid custom ought to be abolished.—Broom's Legal Maxims, 921. Usage and custom, however long continued, can not control or contradict the statute as they can not control or contravene the general law, nor any principle of public policy.—Lawson on Usages & Customs, 453–60; *Barlow v. Lambert,* 28 Ala. 704; *Lehman v. Marshall,* 47 Ala. 362; *E. T. V. & G. R. R. Co. v. Johnston,* 75 Ala. 596; *Garrett v. Trabue,* 82 Ala. 227; *Barnard v. Kellogg,* 10 Wall. 383; *Vermilye v. Adams Express Co.,* 21 Wall. 138; *Allen v. St. Louis Bank,* 120 U. S. 20; *Crouch v. Credit Foncier,* L. R. 8 Q. B. 374.

LESTER C. SMITH, of counsel for appellee.—1. The common law and statutes of England as they existed in 1607, except as changed by statute, compose the common law in force in Alabama. Statutes and customs which became of force as law after that date were of no effect in Alabama except by legislative adoption.—*Carter v. Balfour,* 19 Ala. 814; *Horton v. Sledge,* 29 Ala. 478; *Barlow v. Lambert,* 28 Ala. 704. At common law, in 1607, only a foreign bill of exchange, that is, one between a foreign and English merchant was commercial paper.—Chitty on Bills, star pages 10 and 13; *Oaste v. Taylor,* Cro. Jac. 306; *Barnaby v. Rigalt,* Cro. Car. 301;

2. As there was no paper except a foreign bill governed by the commercial law as part of the commercial law in 1607, and the check in the record was confessedly not of that description, the statutes of the State must control. The statute approved on June 30, 1837, provided that all bonds, bills or notes, payable to any corpor-

ation, person or bearer, should have the affect of credit-
ing a liability only to such person expressly named, or
their endorsers or personal representatives.—Clay's Dig.
326, § 76; Acts 1878, 12. This was held to include all
papers, except possibly, those to bearer only, and those
issued to circulate as money.—*Neal v. Smith*, 5 Ala. 568;
*Kemper & Co. v. Schieffelin*, 5 Ala. 493; *Clark v. Field*, 1
Ala. 468; *White v. Joy*, 4 Ala. 571; *Carew v. Northup*, 5
Ala. 367; *Blackman v. Lehman*, 63 Ala. 547. The law
was unchanged until the Code of 1852, which undertook
to regulate the whole subject of commercial paper and
choses in action. That Code, beginning with section
1525 and ending with section 1549 treated of the whole
subject under the title of negotiable instruments. Among
the properties pertaining to instruments governed by
the general commercial law, at the time of the passage
of that Code, was that of transfer of papers payable to
bearer, or to an existing person or bearer, by delivery
merely. The commercial law in this respect was changed
by that Code in section 1529: "All bonds, bills or notes,
except those issued to circulate as money, payable to
anything or bearer, to any fictitious person or bearer, or
to bearer only; must be construed as payable to the per-
son from whom the consideration moved; if payable to
an existing person or bearer, must be construed as if
payable to such person or order." And in order to pro-
vide for the assignment of all other choses in action,
section 1530 provided for their indorsement and section
1531 declared them subject to equities. The law has
thus stood on the statute books without substantial
change until the present.—Code, 1852, §§ 1525, 1529,
1530, 1531; Code, 1867, §§ 1833, 1837, 1838, 1839;
Code, 1876, §§ 2094, 2098, 2099, 2100; Code, 1886, §§
1756, 1761, 1762, 1765. And it is insisted that the only
instruments in Alabama governed by the commercial
law, are those described in section 1756 of the Code of
1886, as "bills of exchange and promissory notes paya-
ble at a banking house or certain place of payment
therein designated." And that to these instruments,
section 1761 of the Code of 1886 applies, depriving them
of the quality of being transferred except by indorse-
ment.—*Blackman v. Lehman, Durr & Co.*, 63 Ala. 547.

3. An assignment of bills or notes, without indorse-
ment, under our statute, passes only an equitable title,

and the assignee can not be a *bona fide* holder for valuable consideration.—3 Brick. Dig. 257, §§ 68, 69; *Blackman v. Lehman,* 63 Ala. 555; *Cobb v. Bryant,* 86 Ala. 316. The check, if negotiable in Alabama, must be either a bill of exchange or promissory note, because these are the only two instruments known to our commercial law. If it is either, then it is governed by section 1761 of the Code which required an indorsement.

4. If the check in the record is not a bill, or note, then it has no negotiable qualities, and like any other chose in action, was not assignable at common law, is made assignable by endorsement by section 1762 of the Code of 1886, and is subject to equities under section 1765 of the Code of 1886. A check on a bank is held by most authorities to be an inland bill of exchange.—1 Randolph on Commercial Paper, § 8. "All checks are bills, but all bill are not checks."—Benj. Chalmers, Dig. 267; *Harker v. Anderson,* 21 Wend. 372; 3 Amer. & Eng. Encyc. of Law, 211, note 1; *Bull v. Bank,* 123 U. S. 105; *Rogers v. Durant,* 140 U. S. 298; *Moses v. Franklin Bank,* 34 Md. 574; *Lawson v. Richards,* 6 Phil. 179; Story on Promissory Notes, § 487, note; *Risley v. Phenix Bank,* 83 N. Y. 318; *Keene v. Beard,* 8 Com. Bench, N. S. 372, 379 *et seq.*; *McLean v. Clydesdale Bank,* L. R. 9 App. Cas. 95, 104, 106 *et seq.*; *Hopkinson v. Forster,* L. R. 19 Eq. C. 74, 75; 2 Ames Cases, Notes and Bills, 730, 731; *Planters Bank v. Merritt,* 7 Heisk. (Tenn.) 177, 191; *Hopkins v. Ware,* L. R. 4 Exch. C. 268, 271; 1 Morse on Banks & Banking, 610; *Grant v. Vaughan,* 3 Burr. 1516.

5. When want of consideration or fraud, or illegality, or bad faith in the issue is shown, the burden is on the holder to show that he acquired title before maturity, in the ordinary course of business and on a valuable consideration.—*Ross v. Drinkard,* 35 Ala. 434; 3 Brick. Dig., 91, §§ 130, 131. It is apparent from the facts shown in the record that the Adams Cotton Mill was insolvent on May 30, 1890, the date of the transaction, and that this was known to the defendant is clearly inferrible from the fact of its being the banker of the Mill Company, and of the large unsecured indebtedness of the Mill Company to the Bank. And further that the husband, Col. Nelson, was insolvent. That the whole transaction was had with him. The defendant knew, and was bound to know, from the face of the check, that

it was the property of plaintiff.—*Wolffe v. State*, 79 Ala. 201. Under these circumstances it is insisted that the evidence shows conclusively that the defendant had notice and knowledge of facts sufficient to put it on inquiry as to the rights of plaintiff.—*Lockwood v. Tate*, 96 Ala. 353.

6. The husband in dealing with the property of the wife for the benefit of a corporation in which he was interested, clearly occupied a fiduciary relation to the plaintiff.—2 Pomeroy Eq. Jur., § 963; *Holt v. Agnew*, 67 Ala. 360; *Shipman v. Furniss*, 69 Ala. 555; Code of 1886, § 2349; *Stickney v. Adler*, 91 Ala. 198.

7. The defendant, dealing with the husband and aiding him in a patent misapplicaton of the funds of the wife, stands exactly in his shoes, and the burden is on it to show that the transaction was a fair one for the plaintiff, and was made by her with full knowledge of the facts. The case of *Noble v. Moses*, 81 Ala. 530, is conclusive on this point.—*Little v. Knox*, 96 Ala. 179; *Waddell v. Lanier*, 62 Ala. 347; *Lockwood v. Tate*, 96 Ala. 353; *Marchand v. Griffon*, 140 U. S. 516.

8. Modern married women's statutes are strictly construed, and only those powers are conferred which are expressly named in the statute, and they must be exercised in the precise manner pointed out by the statutes. 14 Amer. & Eng. Encyc. of Law, 609, § 5, *et seq*. to page 617; Stewart on Husband & Wife, §§ 234, 236, 237 n. 11. The Alabama cases on this point are so uniform and so numerous that we simply refer to them.—3 Brick. Dig. 552, § 138 *et seq*.; *Vincent v. Walker*, 93 Ala. 165. It is familiar law that a contract of a married woman which she had no capacity to make can not work an estoppel.—14 Amer. & Eng. Encyc. 637, 640, § 5; 645, § 7; *Harden v. Darwin*, 77 Ala. 472; *Wilder v. Wilder*, 89 Ala. 414. Under the Code, § 2346, the wife has full power to contract in writing with the consent of the husband expressed in writing; and by section 2348 the personal property of the wife, or any part thereof, may be sold, exchanged, or otherwise conveyed or disposed of by the husband and wife, by parol or otherwise. There is no other method by which a married woman may be divested of the title to her personalty. When the property is of such nature that the title only passes by writings, as in the case of choses in action, the writ-

ing must be joined in by both husband and wife in some manner.—*Bullock v. Vann*, 87 Ala. 372; *Keeble v. Jefferson Bank*, 93 Ala. 361. Where a writing is not necessary to pass the title, the concurrence of husband and wife in the parol transaction is necessary.—*Scharf v. Moore*, 102 Ala. 48; *Steiner v. Tranum* 98 Ala. 315.

HARALSON, J.—1. The main question for decision in this case, as stated by counsel for appellee is: Whether the appellant is a *bona fide* holder of the check, the subject of this suit, having acquired, before maturity, the legal title for value, in the ordinary course of business.

The action is clearly one in assumpsit.—*Wolffe v. The State*, 79 Ala. 202. The evidence is not conflicting. It shows that the check was drawn by Moses Bros. & Co. on the Merchants & Planters National Bank payable to the plaintiff below, appellee here—Mrs. Margaret Nelson—or bearer, and that the defendant received the money on it from the drawee, and appropriated it, without the indorsement of the payee, and without her knowledge or consent. These facts having been established by the plaintiff, the burden was on defendant, which it assumed, to show its right to the check. Its contention is, that under the law, it passed by delivery, merely; and the defendant having thus acquired it before maturity, the law presumes it was obtained *bona fide* and on a valuable consideration, and its title will prevail over that of the plaintiff.

2. This brings us to consider whether this check is commercial paper in Alabama, and passed by delivery merely.

It would serve no good purpose, perhaps, to trace the history of checks and assign them their place at common law and under statutory systems. Chitty in speaking of them says, that most of the rules applicable to bills of exchange equally affect these instruments.—Chitty on Bills, 12, 511–547. Randolph defines a check to be, "a bill of exchange drawn on a banker, payable on demand."—Randolph on Com'l Paper, § 8. The authorities and text books, as a general thing, class them among commercial instruments. "All checks are bills, but all bills are not checks," is the sum of the conclusion of the authorities.—Randolph on Commercial Paper, § 8, *supra,*

and authorities there cited ; Morse on Banks and Bank-
ing, §§ 363, 393 ; 2 Daniel on Neg. Instr., § 583 ; Byles
on Bills, 13 ; 1 Edwards Bills & Notes, § 19 ; 2 Parsons
on Bills & Notes, 57 ; Story on Promissory Notes, 487 ;
3 Amer. & Eng. Encyc. of Law, 211, n. 1.

In the *Br. Bank of Mont. v. Crocheron*, 5 Ala. 254, this
court, in defining the term, *notes and bills*, as employed
in a statute against the issuance of such instruments by
a corporation, said, they were sufficiently comprehensive
to include *checks*, drafts, bills single, bonds or tokens. In
England and many of the States, a bill may be made
payable to bearer, only, and then the title passes by de-
livery and is payable to whoever may be the holder.
But, we all know that it is within the legislative compe-
tency of each State, when not offending the provision of
the federal constitution or that of the State, against the
impairment of existing contracts, to regulate the nature,
validity, interpretation and effect, of contracts which are
to be entered into, or to be performed within its terri-
tory.—2 Daniel on Neg. Instr., § 865.

In this State, the whole system of commercial paper
has been regulated by statute. In the Codes of 1852
and 1867, these statutes appear in the chapter headed,
"Negotiable Instruments," and in the Codes of 1876 and
1886, in the chapter headed, "Choses in Action." There
is no paper classed as mercantile or commercial, which
was not intended to fall within the regulations of this
chapter. It is noticeable that the words, "bill," and
"bill of exchange," are used interchangeably in the sev-
eral sections, as meaning one and the same thing ; and,
that the words, "bill of exchange," include a check, we
have a direct adjudication, in construction of a similar
statute in New York, in the case of *Risley v. The Phenix
Bank*, 83 N. Y. 318. So far as our investigations have
gone, we have not seen a case, construing a statute in
which the words *bill* or *bill of exchange* occur, where the
question arose, in which they were not held to embrace
a check.

Section 1761 of this chapter of the Code provides, that
"All bonds, bills, or notes, except those issued to circu-
late as money, payable to anything or bearer, to any
fictitious person or bearer, or to bearer only, must be
construed as if payable to the person from whom the
consideration moved ; if payable to an existing person or

bearer, must be construed as if payable to such person or order."

It would seem that in case of a bill of exchange or check, which is payable "to an existing person or bearer," it needed no judicial construction to determine that it "must be construed as if payable to such person or order," since this is the positive injunction of the statute, which is not susceptible of being made plainer by any amount of judicial interpretation. This court, however, was called to construe said section, in reference to municipal bonds which had been issued, payable to bearer simply. Having every other ingredient of negotiability, the court held, that they could not, in obedience to this statute, be construed otherwise, than as payable to the person from whom the consideration moved to the maker, when they were issued ; and, so construing them, it was said, the legal title to them could not be derived, except through indorsement. And, as especially valuable to the case we have in hand, as to the policy of the law in the enactment of said section of the Code, and others belonging to the same system of law, we reproduce a part of that decision of the court. Chief Justice Brickell, speaking, said : "It may well be doubted, whether the former statute embraced any instrument payable to *bearer* only. The present statute not only embraces such an instrument, but every instrument (except bills or notes issued to circulate as money) which is payable to any thing, or to any fictitious person, or *bearer;* and such instruments are not to be construed as payable to whoever may be the holder, but *to the person from whom the consideration moves.* If payable to an existing person *or bearer,* then it is construed as payable to such person or order. The policy of the statute is to deprive instruments of negotiability, which do not on their face clearly indicate to whom their obligations apply, and from whom title can be securely derived ; that title to negotiable instruments, which prevails over the title of the true owner, or over the equities of the original parties, shall be derived only by an indorsement in writing from him to whom they are expressly payable. Such, it is said by Judge Story, was at one time the law of France ; because it was found that bills of exchange, payable to bearer only, or in which a blank was left for the name of the payee, became a cover of fraud and usury."

*Blackman v. Lehman*, 63 Ala. 555; Story on Prom. Notes, § 38; *Cobb v. Bryant*, 86 Ala. 316.

All the instruments mentioned in the statute were, before its enactment and according to the general commercial law, capable of being made payable in any of the ways mentioned in said section 1761 of the Code, and were construed as passing by delivery, without indorsement, and as being payable to whoever came into possession of them.—Story on Prom. Notes, §§ 37, 39; 1 Daniel Neg. Instr., §§ 99, 136; Randolph on Com. Paper, § 654; 1 Morse on Bank & Banking, § 393. If such instruments were stolen, or lost, or parted with by an unfaithful agent, and passed into the hands of a *bona fide* purchaser for value, the true owner could not reclaim them, although deprived of his property without his consent or fault. It was to correct these evils, as was said in *Blackman's Case*, that the statute was passed. We fail to see why checks, as well as any other commercial instruments, do not require the protection of the statute. They are as well known, and, from the necessities of the case, enter as largely into the commercial transactions of the country, as other species of commercial instruments; and after all we have said and attempted on the subject of negotiable instruments for these many years, to relegate them to take their chances as commercial bastards, and make their own way in the commercial world, deprived of the protection which is accorded to other negotiable instruments, it seems would be against reason, authority and the interest of the country.

Yet more. The legislature, at the session of 1888-89, (Acts 1888-89, p. 110), amended said section 1761 of Code, by adding to it the *proviso*, "that all bonds payable to anything or bearer, to any fictitious person or bearer, or to bearer only, which have been or may be issued by the State, or any county or municipality thereof, or by any corporation under authority of law, (except such bonds as appear on their face to be registered), shall be negotiable without indorsement, according to the commercial law and governed thereby, except as to presentment, protest, notice and days of grace." This amendment was evidently intended to meet the difficulties such bonds encountered in circulation, under the statute, as construed in *Blackman v. Lehman*, 63 Ala. 555, *supra,*

[First National Bank v. Nelson.]

Under that section, as it stands under said amendment, what instruments which are classed as commercial paper, in that they are payable "at a bank or private banking house or at a certain place of payment therein designated," (Code, §§ 1756, 1757), are excluded from its operation? These two sections embrace by name,—in the first, 1756,—promissory notes and bills of exchange, payable as specified therein, which are governed by the commercial law in its entirety; and in the second,—1757,—"all other instruments," besides promissory notes and bills of exchange, so payable, which are governed by that law, as to "grace, protest and notice."

All papers, therefore, payable in money, at a bank or private banking house, or at a designated place of payment, which are governed by the commercial law in its entirety, or by that law as to days of grace, protest and notice, are included in the provisions of said section 1761, as amended, except such as that section itself excludes from its provisions, and these are, "bills or notes issued to circulate as money," and the bonds expressly mentioned in the amendatory act. Inasmuch, then, as checks are payable "in money at a bank or private banking house," and are not "issued to circulate as money," by every rule of construction, they are embraced within the provisions of said section.

3. It has been argued, that by the general custom, bank checks, when payable to an existing person or bearer, pass from hand to hand by delivery merely, and are payable to the holder without indorsement, and that this circumstance shows the construction which the general public has placed upon this statute,—a fact, as urged, which should have great weight with courts in determining the true construction of this statute. It is not to be denied, that if the meaning of words of a statute be uncertain, usage may be resorted to for the purpose of interpreting them, (Lawson on Usage & Custom, 462, § 223; Sutherland on Stat. Cons., § 308); but popular disregard of a statute, or a custom opposed to it, will not repeal it; and, a custom or usage which would contradict the commands of a statute ought not to be considered.—Lawson on Usage & Custom, § 216; Sutherland on Stat. Constr., § 137; *Richmond & Danville R. R. Co. v. Hissong,* 97 Ala. 187; *Railroad Co. v. Johnston,* 75 Ala. 596; *Barlow v. Lambert,* 28 Ala. 704.

4.   The undisputed facts show, that O. O. Nelson, the husband of plaintiff, was insolvent, and tend also, without conflict, to show that the Adams Cotton Mill, the debtor of defendant, was insolvent, at the date of the delivery of the check to defendant; that said Nelson, without plaintiff's knowledge or consent, loaned the Adams Cotton Mill said check, which company, being indebted to defendant in a sum larger than the check, passed it without indorsement to defendant, and it was collected by it from the bank on which it was drawn, and the collection placed to the credit of said cotton mill's account with defendant.   The case of *Loeb v. Flash*, 65 Ala. 526, was one where a vendor of goods sued to recover them because the purchaser had induced him, by fraudulently concealing his insolvency, to sell them to him on a credit.   Loeb & Brother, the defendants in the action, claimed that they were innocent purchasers of the goods, from the party who bought them by such alleged fraud, without any knowledge of the fraud. The only evidence that they had paid or given anything of value for the goods was, that they had given the original purchaser credit for their value on a past due account. It was contended that Loeb & Brother were innocent purchasers, and that the suit could not be maintained against them, on that account.   The court said of this defense: ''Merely entering a credit on an account past due, without surrendering anything valuable, would not, under any circumstances, constitute them *bona fide* purchasers, so as to defeat an action such as this.''—*Loeb v. Peters*, 63 Ala. 249; *Phenix Ins. Co. v. Church*, 81 N. Y. 218; *Potts v. Mayer*, 74 N. Y. 594.   The reason of this rule is, that on a failure of the creditor to obtain and retain the goods, the mere entering credit for their value on a past due account, is not a payment of the account.   As was said in *Spira v. Hornthall*, 77 Ala. 146, in commenting on the case of *Loeb v. Flash*, 65 Ala. 526:   ''The distinction is between an *agreement* to receive goods in payment of an existing indebtedness, and an *actual satisfaction* of indebtedness; as where the creditor, by the purchase materially changes his position, and gives up something of value on the strength of the property, such as a surrender of the evidences of indebtedness, or prior security.   If the creditor's title should fail, by reason of his debtor's fraud in getting the goods, his

debt still remains unsatisfied, and the right of the original owner to avoid the sale, and recover the goods from the transferee of his fraudulent vendee, will not be defeated."

In the case before us, there is no evidence that defendant materially changed its position towards the cotton mill, by paying out any cash for the check, or parting with anything of value for it, or surrendering any security ; and if the mill had no title to the check and defendant's right thereto failed in consequence, there is nothing in the transaction which avoids its right to pursue the mill for the debt, as it could have done beforehand. The payment was merely nominal, and did not constitute the defendant a *bona fide* purchaser for value, and entitle it to the protection the law gives such a purchaser.

Nelson, the husband, was insolvent ; the cotton mill was also, as it appears, insolvent ; it owed defendant more than double the amount of this check ; the check was payable to the plaintiff and came to the defendant, unindorsed by her. These were suspicious circumstances, quite enough so, to have aroused the diligence of the defendant to ascertain the rights of the plaintiff in the check. In view of the facts, the bank was not warranted in reposing unquestioned confidence in Mr. Nelson's capacity to use said check as his own. Good faith, as has been often declared, is an essential element to protection to one as a *bona fide* purchaser. Having such information as would put a prudent person on inquiry, and having failed to pursue it, which if pursued would have led to a knowledge of plaintiff's superior rights, lack of good faith is to be imputed to defendant, and it can not, therefore, avail itself, in this transaction, of the plea of a *bona fide* purchaser for value.—*Lockwood v. Tate*, 96 Ala. 356 ; *Wolffe v. The State*, 79 Ala. 202 ; *Barton v. Barton*, 75 Ala. 400; *Taylor v. The A . & M. Asso.*, 68 Ala. 230 ; *Craft v. Russell*, 67 Ala. 9.

5. Besides this, there is no question that the check was the separate property of Mrs. Nelson, and was not subject in any manner to the liabilities of the husband. Code, § 2341. The check gave the defendant notice, in that it was payable to Mrs. Nelson, that it was her property. It is of no consequence that Mr. Nelson was acting or assuming to act as his wife's agent in disposing

of the check, for in neither instance had he any right to transfer title to her personal property without her consent. So, if it were admitted that a check payable to a specified person or bearer is transferable by mere delivery, such a transfer would, at least, be illegal, and inoperative, when payable to a married woman, to pass her title to it, unless the transfer were made with the consent both of the husband and wife.—Code, § 2348; *Scharf v. Moore*, 102 Ala. 468; *Steiner v. Tranum*, 98 Ala. 315.

6. Enough has been said, to distinguish this case from that of the *Mobile & Montgomery Railway Co. v. Felrath*, 67 Ala. 189, which held, that to enable the principal to maintain an action for money had and received against a person to whom the agent has paid the principal's money, in discharge of his own debt, it must be shown by the plaintiff that the agent is in default to the principal, and that the latter has not the means of indemnity in his hands. That principle is not applicable to the case at bar, and can not be held to annul the statute and our decisions in construction of it, touching the transfer of the title to the personal property of a married woman.

7. We do not deem it necessary to discuss the question of ratification, so earnestly insisted on by the appellant, further than to say, that the plaintiff can not be held to have ratified an act of her husband, of which she was ignorant; that there is no evidence to show that she knew or had any information—certainly, before January, 1892, and possibly not till shortly after her husband's death, in May of that year—of what disposition he had made of her money. The defendant introduced evidence which tended to show an admission of the plaintiff, made not more than a month after her husband's death, that she knew he had received a $10,000 cash payment on the sale of the house and lot, but that she did not know, until a short while before, what disposition he had made of it; that Owen Nelson, her husband's nephew, was copying a book of the Adams Cotton Mills, a short time before, and came across an entry credited to her, of $10,000, in checks, and informed her of it; that she said she did not think it was of any account, or her husband would have looked after it, and before that, she did not know what disposition he had made of the money. It was not shown, that she knew of the check for $5,000,

having been delivered to defendant, or at what time, after her husband's death, she ascertained the fact. She was authorized to presume he had made no illegal disposition of her money, and, except as above stated, it does not appear that she had any knowledge or information of the transaction by which defendant acquired said check from the cotton mill. This suit was commenced on the 8th March, 1893, and some time prior to that date, and after the death of her husband, she must have been informed of it. From this evidence we are unable to hold the plaintiff to a ratification of the illegal disposition of her check by her husband by which the defendant bank acquired it and came into the possession of her money.

We will not consider the other questions which have been discussed. There was no error in giving the general charge in favor of the plaintiff, and in refusing a like charge for defendant.

Affirmed.

BRICKELL, C. J., not sitting.