JOHN H. MARTINETT ET AL., PLAINTIFFS IN ERROR,
v. ANTONI MACZKEWICZ, DEFENDANT IN ERROR.

1. In an action of tort for the conversion of chattels, an offer to show what such articles brought at a previous sheriff's sale was properly overruled.
2. Such a sale has no tendency to show the real value of the property.

On error to the Mercer Circuit Court.

Argued at February Term, 1896, before BEASLEY, CHIEF JUSTICE, and Justices DIXON, MAGIE and GARRISON.

For the plaintiffs in error, *John H. Backes.*

*Contra, Barton & Dawes.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.   On this record but a single question is presented for decision.

The litigation originated in this wise: The plaintiffs in error obtained a judgment against the wife of the defendant in error, and by execution sold the goods forming the subject of this suit, which has been brought by the husband of the said defendant in execution against the plaintiffs therein and the sheriff.

The bill of exception states in these words the proceeding at the trial which is alleged to be erroneous, viz.: "And thereupon the defendants, to maintain the said issue on their part, and for the purpose of showing the value of the goods and chattels mentioned in the declaration of the plaintiff, at the time when the alleged trespass set forth in said declaration was committed, offered to prove the price for which the said goods and each of them were sold by the defendant Augustus T. Ege, sheriff of the county of Mercer, at a public sale held on the 29th of March, 1895, by virtue of an execu-

tion issued out of the Circuit Court upon a judgment recovered in said court by John H. Martinett, defendant aforesaid, against Antonina Maczkewicz," &c.

This offer was objected to by the plaintiff and was overruled.

The inquiry therefore is whether, in a trial for the tortious taking of chattels, in elucidation of the value of such chattels, it is competent for the defendant, being the trespasser, to show the price they brought at a sale made by the sheriff by force of a judgment and execution against a third party.

It is not observed that any court has ever rendered an affirmative answer to this inquiry. The only authority even tending in that direction are two or three decisions in the courts of New York, which hold that sales of the kind in question may be received for the purpose specified when it has been made to appear that they have been conducted under such circumstances that it can be reasonably inferred that the articles were disposed of at fair rates. The language used by the court in these instances appears to preclude the doctrine that, for the purpose in question, the result of one of these official sales, unexplained with respect to its methods or concomitants, should be regarded as legitimate evidence. Such an idea seems to be excluded, *ex industria*, in *Parmenter* v. *Fitzpatrick*, 135 *N. Y.* 190, which is the last expression on the subject. In that case a number of creditors had caused a sheriff's sale to be made, and the court, in assigning its reasons for its conclusion in favor of the admissibility of such official procedure as tending to show the value of the things thus cried off at auction, expresses its views in these terms, viz.: "In this case it appears beyond all controversy that it was to the interest of these judgment creditors, the sellers of the property, &c., to obtain as high a price as they could, and where the offer is to show that in fact the property was sold to the best advantage, we think that the evidence as to the result of the sale should, under the circumstances of this case already detailed, have been admitted. It was not conclusive, perhaps a jury might think it was very uninfluential,

but we simply say that it is competent and should have been admitted."

From this citation it may be said to be clear that the rule approved by the court was that, as applied to the class of cases to which the present one belongs, the sale by the sheriff has, *per se*, no evidential force whatever, but that under the influence of certain conditions it may become infused with such potency.

It has not been observed that the rule, even when thus limited, has been approved or adopted by any tribunal outside of the state in which it appears to have originated. It is not to be found among the institutes of the common law practice, nor among the decisions of the English courts. It is true that it has been sometimes supposed that, in the case of *Whitehouse* v. *Atkinson*, 3 *Car. & P.* 339, the admissibility of testimony of this kind has received the approval of Lord Tenterden, but this is deemed an unwarrantable assumption, for no such question was presented or decided. On that occasion it does not appear how the fact of the sale by the sheriff and its results came into the case, and all the information that we have touching the matter is that the Chief Justice, in charging the jury, adverted to the fact that as the plaintiff in the case was an assignee in bankruptcy he would, if the goods had come into his hands, have been obliged to sell them very much in the same way as the sheriff had done, observing, therefore, that in the presence of such conditions " it often happens that a jury considers the sum at which the goods were actually sold at auction as a fair measure of damages." From this judicial instruction it is entirely manifest that it was not intended to be intimated that the product of the sheriff's sale was any criterion of the fair value of the articles disposed of, and on that account was admissible as evidence on the subject. The proposition that it being the unquestionable duty of the jury to award the plaintiff the real value of the chattels at the time of conversion, they had the right to award less than that measure, on the ground that a sale by the assignee would not be likely to produce a greater sum

than that realized from the sheriff's sale, is not to be justified on any known legal principle, but as that subject is altogether foreign to our present inquiry, it is not necessary to discuss it.

In our own state we have no pertinent decision. It is deemed, however, that the practice of our courts has been to exclude testimony of the kind in question. In inquiries of this nature it has been customary to show the market value of the property if it has a fixed rate of that kind, and, if it has no such estimation, to prove its value by the opinion of experts and by an exposition of the state and condition of the things sold. In such an inquisition the price obtained at a sheriff's sale would seem to be wholly valueless. When a willing seller and a willing buyer agree and fix the price of an article, it is obvious that it is reasonable to infer that such estimation approximates closely to the real value of such article; but in an official sale by auction the owner has no voice in the affair, and each bidder is striving to obtain the thing sold not at its actual worth, but at a bargain. It is vain to deny, for all experience attests the fact, that, as a general thing, the attendants at a public auction of personal property are there with the expectation of acquiring the articles purchased much below their cost in the market. It is deemed that, as *criteria* of real value, such transactions can have no effect except to mislead.

Nor is the affair ameliorated to any great extent by the addition to it of the requirement of the New York courts. To show the fairness of such a procedure by the sheriff can mean nothing more than that it shall appear that there was a reasonable attendance of bidders, and that the sales were made and cried off in the usual way. The inconvenience would be great to attempt further to test the qualities of these auctions, as it would often occur that such an investigation would be more laborious than the examination of the main issue between the litigants. The result is that it is conceived that these public forced sales cannot be resorted to as affording a reasonable standard of the real value of the things thus sold, and that consequently they should not be admitted in evidence

for that purpose. The two following cases accord with this view: *Steiner* v. *Tranium,* 98 *Ala.* 315, and *Cassin* v. *Marshall,* 18 *Cal.* 689.

Let the judgment be affirmed.