HENGST v. JOHN B. CARTER CO.

(District Court, D. New Jersey. September 18, 1916.)

CONTRACTS ⟨KEY⟩231(1)—CONSTRUCTION—"REASONABLE VALUE" OF USED MACHINERY.

Complainant was employed by defendant, which was a railroad contracting company, as manager of the work under a construction contract, and was to receive a monthly salary and on completion of the contract a share of the net profits. These were to be ascertained by charging to the work, in addition to the usual expenditures, the value of the plant, etc., used, which at the end of the work were to be credited back at their reasonable value to be agreed upon by the parties. These, in fact, belonged to defendant. After the contract was completed, a settlement was made, and two other jobs were taken and performed under the contract. Held, in a suit for account under the last contract, that the "reasonable value" of the plant at the completion of the work was not what it might bring at a sale as secondhand equipment, but its utility value to one who, like defendant, made use of it, and that as the parties in settlement under the two preceding contracts had agreed that such value was cost, less depreciation from use, such basis would be adopted by the court. Also, held, that defendant was not entitled to charge against the work interest on the

capital invested or the salary of its president; there being no provision therefor in the contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1046, 1047, 1048–1050, 1052; Dec. Dig. ☞231(1).

For other definitions, see Words and Phrases, Second Series, Reasonable Value.]

In Equity. Suit by Robert Graham Hengst against the John B. Carter Company. On exceptions to master's report. Confirmed.

Lindabury, Depue & Faulks and J. Edward Ashmead, all of Newark, N. J., for plaintiff.

Collins & Corbin, of Jersey City, N. J., for defendant.

RELLSTAB, District Judge. This is a suit for an accounting. On February 27, 1909, the plaintiff and the defendant entered into a written agreement, whereby the former became the manager of the latter in carrying on certain work in connection with the construction of the railway of the Lake Erie & Pittsburg Railway Company. A summary of the provisions of the contract, pertinent to the present controversy, is as follows: The plaintiff was to receive monthly the sum of $250 as an advance, together with his necessary traveling expenses in connection with said employment. On completion of said contract and payment to the defendant of the amount due it for said work, an accounting to ascertain the profits of such construction work was to be had, and, after deducting said monthly advances and other obligations owing by plaintiff to defendant, the latter was to pay the former one-third of said profits. In ascertaining said profits, the contract was to be debited with all machinery, tools, supplies, plant, and other articles purchased by the defendant for said work, and said contract was to be credited with all payments made on account of the sale of any of said machinery, etc. The plant was not to be considered as a permanent investment of the defendant, but as an expense on account of such work, and in ascertaining said profits the parties were to "agree upon the reasonable value of the plant." The defendant was to endeavor to secure work to keep said plant continuously employed, in which event said contract was to cover such new work. Each new contract was to "be charged with the reasonable value of the plant as the same may have been fixed on completion of the preceding contract." If plaintiff abandoned the work before its completion, said monthly payments were to be full payment of his services; but, in the event of his death or disablement prior to said completion, he or his heirs, etc., were to receive one-third of the accumulated profits "to be computed as near as may be to the date of his death or disability, after deducting therefrom so much of the monthly advances of two hundred fifty dollars ($250.00) and any other obligations then owing by the second party (plaintiff) to the construction company (defendant)."

Two other pieces of construction work were secured, and said contract was extended to cover them. The first of these additional constructions was for the Chicago, Burlington & Quincy Railroad, and the second for the Cincinnati, Hamilton & Dayton Railroad. The extension of said contract over the first of these additional works was

accomplished by correspondence without any change of terms. In extending said contract to the last construction, a supplemental agreement, dated March 21, 1910, was entered into, a summary of the pertinent provisions of which is as follows: If, on completion of said work and the rendition of the final accounting, the defendant shall have secured other work upon which to use said plant, and the plaintiff shall desire to continue in defendant's service and enter upon such work, he shall be credited upon the defendant's books with the amount earned by him on said work, less advances made to him and his obligations to the defendant; that so long as said employment continued the amount carried by him, less said advances, should remain with the defendant "on plant account until such time as the parties mutually agree"; the monthly advances were increased to $300, and, if amount earned by plaintiff did not amount to said advances, the plaintiff on demand was to repay the difference to the defendant.

The plaintiff continued in the defendant's employment until the construction work in said three contracts was finished, and, upon their failure to agree as to the results of the last work, the present suit was instituted to recover alleged profits of $22,159.53. The defendant answered that the last construction had resulted in a loss to an amount in excess of $30,000 and sought by counterclaim to recover the advances made to plaintiff during the progress of the work. On reference the master found that there was due the plaintiff the sum of $20,917.67, with interest from April 1, 1913. Both parties filed exceptions to the master's report. The main controversies raised by these exceptions are over the interest claimed by the defendant on the capital invested by it in furthering said work, the payment by it of certain salaries, and the value of the plant on hand when the work on the Cincinnati, Hamilton & Dayton contract was completed.

The plaintiff contends that "the reasonable value of the plant" means that the several items making up the plant used should be valued at their fair worth to the owner, that the cost less depreciation was the valuation adopted by the parties upon the termination of the previous jobs, and that in the present accounting the valuation of plant should be made on the same basis. The defendant contends that "reasonable value" means market value, and that, as at the conclusion of such construction work the plant was "secondhand," market value means "the fair selling value as secondhand materials."

The master adopted the plaintiff's theory of valuation. I agree with the master. If the business relations between these parties had ended with the completion of the work which called the first contract into being, and the parties had failed to agree upon the meaning of the term "reasonable value," I should be loath to accept the interpretation suggested by the defendant, in view of the fact that it was in the construction business generally and continued therein after the contractual relations between it and the plaintiff ceased, and had use for that kind of material. The price at which property is bid in at public sale is no criterion of value. Martinett v. Maczkewicz, 59 N. J. Law, 11, 35 Atl. 662; Holcombe v. Trenton White City Co., 80 N. J. Eq. 122, 82 Atl. 618, affirmed 82 N. J. Eq. 364, 91 Atl. 1069; In re

Mary E. McAusland, 235 Fed. 173. And the price that a dealer in or user of secondhand material is willing to give for it is usually as misleading as a test of its value. But the question of interpreting the "reasonable value" comes before the court in a less restricted form. The business relations of the parties did not end with the completion of the work specifically named in the contract. New work, as contemplated by said contract, was entered upon under it, and a valuation of the used plant and materials to be charged against the new contracts was agreed upon by the parties.

At the time the original contract was made, the defendant was already engaged in the construction business. It did not come into existence for the particular job mentioned in such contract. It had a construction plant on hand. More would probably be required. All would be secondhand as soon as use was made of it. Some portions, through such use, would become worthless; others would depreciate in utility, and therefore in value; and still others would remain efficiently serviceable after the particular construction was finished.

As the contract reflects that the defendant contemplated continuing in the construction business with or without the aid of the plaintiff after the Lake Erie & Pittsburg Railway Company's work was finished, and as the ownership of the plant was in the defendant, it would not be in the power of the plaintiff to force the defendant to dispose of it at the conclusion of such work, that an accounting of profits might be had. The defendant would have the right to retain such plant for any use it desired, being chargeable only with its "reasonable value." Secondhand construction plant and materials are usually sold below cost, but not always. It is not an impossible supposition that there may be such a demand for immediate use of such kind of machinery as to induce the giving of a price even in excess of the original cost. Because a business condition of that character prevailed would not entitle the plaintiff to insist that the machinery be sold or valued at such an extraordinary price in order to swell the profits of the work. Such an insistence would not be reasonable. Nor would such price constitute "reasonable value" of the plant. Nor would it be reasonable to permit the defendant while continuing in the construction business in which he had use for such plant, in order to lessen the profits of a particular job, to insist that it be sold at public sale, at which directly or indirectly it could become the purchaser at a low figure; nor to compel the plaintiff to accept a valuation put upon it by dealers in secondhand machinery.

When the time came to make an accounting for the work done for the Cincinnati, Hamilton & Dayton Railroad, the parties had already finished two other jobs under this contract, and they had agreed upon the value to be placed upon the "plant" used in said constructions. The basis for their valuation was cost less depreciation; the depreciation running from 5 to 15 per cent. This agreed basis was satisfactory to the only parties interested in said work, and, in the absence of express agreement, an exceptionally good reason would have to exist to justify this court in adopting a different one. No such reason appears. When the contractual relations between these parties terminated, the

defendant was under no necessity to sell the plant. As noted, the bulk of the plant used in the construction of the Cincinnati, Hamilton & Dayton work was taken by the defendant and used in similar work. In such circumstances, "utility value" rather than "market value" of such secondhand materials is "reasonable value" within the meaning of said contract, and such value rather than market value should be credited to said contract in ascertaining the profits of said work. As cost less depreciation was the basis of valuation adopted by the parties in reaching the value of the used plant after the completion of the earlier jobs, that basis should be adopted in determining the value of the plant for the purpose of the present accounting.

With reference to the charges of interest on capital invested and salary of John B. Carter, president of the defendant, the contract does not, in terms, authorize either charge, and, in the absence of any express provision to the contrary, the financing of the work and the rendition of any service by the executive officer of the defendant, in relation to such work, must be held to be a part of the defendant's contribution to the enterprise, and chargeable only to the defendant's share of profits. No charge for like interest, or for president's salary, was made on account of the first two jobs under this contract, and none should be allowed on the Cincinnati, Hamilton & Dayton Railroad work.

On these main disputes, as well as all others which do not relate to alleged clerical, mathematical, or inadvertent errors, the master's findings are affirmed. The master having made at least one mathematical error (see item No. 26 of his "schedule of plant"), and as others, which may be classed as clerical, mathematical, or inadvertent errors, are alleged, the report will be sent back to him to correct any mistakes of that character that may exist.