JOHN B. CARTER CO. v. HENGST.

(Circuit Court of Appeals, Third Circuit.  November 7, 1917.)

No. 2286.

CONTRACTS ⊝⟶170(1)—CONSTRUCTION—PRACTICAL CONSTRUCTION BY PARTIES.
    The parties entered into an agreement for doing of railroad construction
    work; defendant to contribute the plant, which it owned, and complain-
    ant his services as manager.  There was no provision for termination of
    the contract, which contemplated the securing of successive contracts for
    work, nor was there any provision for valuation of the plant; but there
    was a provision for determining the profits on each contract performed,
    and that, "in ascertaining the profits made on said contract on completion
    of the work, the parties hereto shall agree upon the reasonable value of
    the plant."  In making such several settlements, the plant was valued, by
    taking its cost and charging certain percentages for use and deterioration.
    *Held* that, in view of such practical construction of the contract by the
    parties, the same method of valuation was properly adopted by the court
    in a suit for final settlement and accounting between them, after comple-
    tion of the last contract.

Appeal from the District Court of the United States for the District
of New Jersey; John Rellstab, Judge.

Suit in equity by Robert Graham Hengst against the John B. Carter
Company.  Decree for complainant, and defendant appeals.  Affirmed.

For opinion below, see 235 Fed. 982.

Collins & Corbin, of Jersey City, N. J., and Charles A. Denneen,
of New York City, for appellant.

Lindabury, Depue & Faulks, of Newark, N. J. (J. E. Ashmead, of
Newark, N. J., of counsel), for appellee.

Before BUFFINGTON, McPHERSON, and WOOLEY, Circuit
Judges.

BUFFINGTON, Circuit Judge.  In the court below, Robert G.
Hengst, a citizen of Pennsylvania, filed a bill against the John B.
Carter Company, a corporate citizen of New Jersey, for an accounting.
An interlocutory decree for such accounting having been entered, the
cause was referred to a master, who took testimony, examined the
accounts submitted by both parties, and thereafter filed a report finding
a balance in favor of Hengst.  The Carter Company having filed ex-
ceptions to such report, the court below heard the same, and in an
opinion published in 235 Fed. 982, made some minor clerical correc-
tions, but in substance adopted the views of the master and entered a

⊝⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

decree in Hengst's favor for some $19,000. Thereupon the Carter Company took this appeal.

Without here restating in detail the history of the cause, all of which is fully set forth in the opinion referred to, it suffices to say the parties, by written contracts, engaged in railroad construction work, and this bill was for an accounting for alleged profits. Each party submitted an account to the master, and, apart from minor differences, there was no substantial difference between them, save as to the value placed in the accounting on the construction plant which the Carter Company owned and which had been used in the several different railroad contracts the parties had completed: In that regard the contention of the Carter Company was that the aggregate of the market value of the different appliances, tools, etc., which made up the plant, was the value to be adopted as a basis of settlement. On the other hand, Hengst claimed the plant should be valued as a going concern, and its value determined by its cost price, less proper deductions for use and deterioration.

The relations and rights of the parties, as we have said, were created by contract, and are to be determined by such contract, and while the situation that arose was, as is generally the case, and is generally the cause of disputes, one not foreseen or provided for by the contract, still the contract, its terms, purposes, and objects, constitute the spirit in which the rights of the parties should be adjusted. Turning, therefore, to such contract, we find it was entered into with a view to the parties, not only doing the particular contracting work then undertaken, but also other work to be thereafter secured. In this joint initial enterprise, and in those to succeed and actually succeeding it, the Carter Company was to contribute the use of the plant it owned, and Hengst was to contribute his services. Provision was made for determining the profits of each separate work thus undertaken, and for carrying the plant into succeeding operations, by the following stipulation:

"In ascertaining the profits made on said contract. on completion of the work the parties hereto shall agree upon the reasonable value of the plant."

In fulfillment of this provision, the parties, as new contracts were obtained, fixed the value of the plant in settling the profits of one contract and establishing a profit basis for a new construction in operation, by taking the cost of the plant and charging certain percentages for use and deterioration. Such method of fixing the plant value, the plaintiff contended for before the Master. The latter followed that view, the court below concurred, and we are now asked by the plaintiff to adopt it as our view. On the other hand, the defendant contends for a market price for the individual articles of the plant. This, in brief, makes a difference of some $19,000 in valuation, and is the substantial dispute here involved.

The situation, as we have said, is one not contemplated by the contract and necessitates a valuation of plant, for which the contract did not provide any particular method. The contract contemplated and provided for a successive series of future contracts, and made no explicit provision for a stoppage of the relation between the parties. But, while no stoppage was provided for, we think the court below, sitting

in this cause as a chancellor, has grasped and enforced a settlement based on the spirit of the contract as interpreted by the parties to it. While, as we have said, the contract made no provision for the ending of the relations between Hengst and the Carter Company, yet manifestly the contract could not have been made without the possibility of its some day ending. And in the absence of any provisions for a valuation at its termination, what standard of valuation commends itself more highly, or is more likely to be right, than the one which the parties had themselves set the seal of their approval upon by adopting it in their performance of the contract? That contract provided that "in ascertaining the profits made on said contract, on completion of the work the parties hereto shall agree upon the reasonable value of the plant," and in construing and applying that language they had taken cost with a deduction for use and deterioration as a standard of the reasonable value of the plant.

Why should not that standard also apply to the ending of the relation? The plant was owned by the Carter Company. It was meant for continuous service. Hengst had neither ownership nor property interest in it; he could not compel its sale or future use. Nor was the Carter Company obliged to disintegrate and sell the plant in the market, in order to fix a value on which to settle with Hengst. Under such circumstances, we are clear that the value of the plant when the parties separated was that reasonable value which the parties had acted upon, namely, its plant value as a plant, based on cost, less due allowance for use and deterioration. In Attorney General v. Drummond, 1 Dr. & War. 368, Sugden, Chancellor, said:

"Tell me what you have done under such a deed, and I will tell you what that deed means."

We are of opinion the court below, in following the path the parties had made, was more likely to be right than if it had departed therefrom.

Finding in this particular and in other respects no error, the decree below is affirmed.